# Burger *v.* The State.

### Indictment for Larceny of Horse.

1. *Cross-examination of witness; criminating questions.*—A witness may be questioned, on cross-examination, about matters which tend to show bias or partiality towards the party by whom he is introduced; but, if the answer would tend to criminate himself, he may decline to answer; as, where he is asked, if he did not falsely tell the officer, who was searching for the defendant, that he did not know where he was; and having declined to answer, allowing the question to be asked is not error.

2. *Larceny of stray or loose horse.*—A horse may be the subject of larceny, although he has strayed from the premises of his owner, or has been removed by another person from the place where his owner had fastened him.

3. *Alibi; charge as to proof of.*—When an *alibi* is set up in defense of

[Burger v. The State.]

a prosecution for the larceny of a horse, and a witness for the defendant testifies to having seen him at a stated time and place, while the witnesses for the prosecution testify to having seen him on the horse at another place two or three hours afterwards; a charge asked, claiming an acquittal if the jury believed the testimony of the defendant's witness, is properly refused, in the absence of all evidence as to the distance between the two places.

FROM the Criminal Court of Jefferson.

Tried before the Hon. S. E. GREENE.

The defendant in this case, Bob Burger, a freedman, was indicted for the larceny of a horse, the personal property of Henry Glenn (or Green, as the name is also written in the transcript); was tried on issue joined on the plea of not guilty, convicted, and sentenced to hard labor for the county for two years. On the trial, as appears from the bill of exceptions, the owner of the stolen horse testified, as a witnes for the State, "that he had the horse tied in an uninclosed place at the back of his house in the city of Birmingham, on Sunday night, about the 23d August, 1887; that he missed the horse that night, or the Monday morning following," and had the defendant arrested, on Tuesday or Wednesday afterwards, on information given to him by Tom Shad and Luke Hill; that the defendant lived near him, and had tried to buy the horse. Tom Shad, being then examined as a witness for the State, testified that, "on Tuesday evening after the horse was missed, between two and three o'clock, he saw the defendant riding said horse, very rapidly, on Twenty-fifth street in said city of Birmingham, between Eleventh and Twelfth avenues, and that he was riding in a northerly direction." Luke Hill, another witness for the State, testified that, "on said Tuesday evening, between four and five o'clock, he saw the defendant riding said horse down the Black road, near Twenty-fifth street and Eleventh and Twelfth avenues in said city; that the defendant was then riding between a trot and a walk, on the side of the road, among the bushes." The defendant then introduced one Dickey as a witness, who testified that, on said Sunday night, he slept in the same house with the defendant, knew that he was at home all night, and left him at the house on Monday morning; and one Henry Davis, who also slept at the house on Sunday night, and who further testified that, "on the Monday following, and on Tuesday until twelve o'clock, the defendant worked under him on the North Birmingham dummy railroad, where witness had a contract; that at about two o'clock on said Tuesday he saw defendant go

[Burger v. The State.]

down to a tree near Sloss' Factory, and sit down at the root of the tree, on the far side from him, and did not again see him until about six o'clock in the morning [evening?], when, as he was coming from his work at six o'clock, he saw defendant coming along behind him from the direction where witness had last seen him." On cross-examination of the witness Davis, having testified that he first heard of the horse having been stolen when an officer came in search of the defendant, who was at the time in a back-yard near by, as he knew, he was asked, "if he did not tell the officer that he did not know where the defendant was." The defendant's counsel objected to this question, and asked that the witness be informed that he was not bound to criminate himself; and the witness then declining to answer the question, "the court allowed the privilege." The bill of exceptions then adds: "The action of the court in this is here assigned as error."

The court charged the jury as follows: "If the jury should believe from the evidence that the horse was taken away from Glenn's premises by some other person than the defendant, or itself got out, and the defendant afterwards feloniously took and carried it away, he would be equally guilty as though he had taken it from the lot." The defendant excepted to this charge, and also to the refusal of the following charges, which were asked by him in writing: (1.) "If the jury do not believe beyond a reasonable doubt that the defendant was not near the Sloss Furnace, and away from the place where he was said to have been seen on Tuesday evening, at the time he was said to have been seen on that evening, they must acquit the defendant." (2.) "If the jury believe that the defendant stayed in his room at home on the Sunday night on which the larceny was said to have been committed, or if there is a probability that he stayed at home that night, they must acquit him." (3.) "If the jury do not believe, beyond a reasonable doubt, that the defendant did not stay at home all night on said Sunday night, they must acquit him."

THOS. N. McCLELLAN, Attorney-General, for the State.

STONE, C. J.—The Criminal Court committed no reversible error in allowing the witness, Henry Davis, to be asked on cross-examination, if he did not tell the officer, in reply to an inquiry, that he did not know where the defendant was. Much latitude must be allowed on cross-examination, and

[Burger v The State.]

much must be intrusted to the enlightened discretion of the presiding judge.—*Ingram v. State*, 67 Ala. 67; *Sylvester v. State*, 71 Ala. 17; *DeArman v. State*, *Ib.* 351. Any testimony, tending to show bias or partiality of the witness to the party in whose behalf he has testified, is admissible on cross-examination. Even questions which call for criminating answers, may be allowed by the court on cross-examination; but, if the witness is unwilling to answer such question, he must not be forced to do so. Witnesses can not be required to criminate themselves, if they claim their constitutional exemption. What we have said relates to ordinary witnesses. If defendants in criminal prosecutions elect to make statements, or testify in their own behalf, rules somewhat different are applied.—*Clarke v. State*, 78 Ala. 474.

The affirmative charge instructed the jury, that it was not necessary to a conviction that the defendant should have removed the horse from Glenn's premises; that if the horse was taken away by some one other than the defendant, or got away himself, and the defendant afterwards feloniously took and carried him away, he would be equally guilty as if he had taken the horse from the premises of the owner. This charge asserted nothing more than that the horse could be the subject of larceny, even though, at the time, he had been removed, or had strayed from the premises of his owner. It is scarcely necessary to cite authorities in support of this proposition.—*Griggs v. State*, 58 Ala. 426. There was no error in giving this charge.

What we have said above demonstrates that the trial court did not err in refusing the second and third charges asked by the defendant. Each of them bases the right of acquittal on the fact, if found to be a fact, that the defendant did not leave his house during the night, when it is claimed the horse escaped, or was carried from the premises of his owner; in other words, that unless the defendant took the horse from the premises of the owner, and during that night, he could not have committed the larceny. This is diametrically opposed to the principle declared in the affirmative charge, commented on above.

There are many objections to the first charge asked by the defendant and refused. This charge, we suppose, rests on the testimony of the witness Henry Davis. Davis testified, that he last saw defendant on Tuesday after the horse disappeared (Sunday night), and that he was sitting at the root of a tree, near Sloss' Factory. This was about two o'clock.

[Barnett v. The State.]

The criminating witnesses testified, that they saw the defendant riding the horse the same evening. One stated, that he saw the defendant riding the horse between three and four o'clock, P. M.; the other, between four and five o'clock, on the said Tuesday. Each of these witnesses describes the street in which the defendant was seen. We have no means of ascertaining the distances between the places where the witnesses claim to have seen the defendant, and Sloss' factory, or Sloss' furnace, if they be one and the same. The testimony furnishes no data. The charge claims an acquittal unless the jury believe, beyond a reasonable doubt, that the defendant was not near Sloss' furnace at the time he is said to have been seen on said Tuesday evening. We can not know, from any thing shown in the record, that the defendant was not at the tree near Sloss' furnace at two o'clock, and riding the horse at the places named by the witnesses, between three and four, and four and five o'clock, P. M. The record, therefore, fails to show error in this ruling.

Affirmed.