THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MARY CSONTOS *et al.* Plaintiffs in Error.

*Opinion filed October 24, 1916—Rehearing denied Dec. 7, 1916.*

1. CRIMINAL LAW—*larceny indictment must give name of the owner of property if known.* The owner of the property stolen is so affected by the crime of larceny that his name is material to the statement of the offense in the indictment, and the ownership must be proved as alleged.

2. SAME—*when an allegation of ownership is not proved.* An allegation in an indictment for larceny which charges the ring stolen to be the property of a certain person is not proved by evidence that the diamond in the ring had been given to him by his mother, who afterward took the ring back with his consent and had the diamond re-set in the ring in question intending to give the diamond back to him when he was older.

3. SAME—*rule as to finding of lost property.* If the finder of property does not know who the owner is and there is no clew to the ownership there is no larceny although the finder converts the goods to his own use, but if the finder knows or has a reasonable clew to the ownership, which he disregards, he is guilty of larceny.

4. SAME—*lost property is presumed to be in possession of legal owner.* All personal property not abandoned is by construction of law regarded as in the possession of some person, and the law regards the possession of a lost article as being that of the legal owner who was previously in possession, until the article is taken into the actual possession of the finder.

5. INSTRUCTIONS—*what facts constitute constructive possession should be explained to the jury.* The facts which constitute constructive possession in consequence of a rule of law different from the essential nature of possession as commonly understood should be explained to the jury in an instruction which attempts to state the rule of law as to larceny of property actually or constructively in the possession of the person from whom it is alleged to have been stolen.

6. SAME—*jury should not be instructed in legal phrases not understood by laymen.* The court should not instruct the jury in legal phrases not understood by laymen and which tend to confuse and mislead the jurors.

7. GIFTS—*gift inter vivos must be irrevocable.* It is essential to a gift *inter vivos* that it be absolute and irrevocable, that the giver part with all dominion and control over the property, that the

gift go into effect at once and not at some future time, and that there be a delivery to the donce and such a change of possession as puts it out of the power of the donor to re-possess himself of the property.

FARMER, CARTER and COOKE, JJ., dissenting.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOSEPH H. FITCH, Judge, presiding.

EDWARD N. SHERBURNE, for plaintiffs in error.

P. J. LUCEY, Attorney General, MACLAY HOYNE, State's Attorney, G. P. RAMSEY, and D. E. DETRICH, (MARVIN E. BARNHART, and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

An indictment containing two counts was returned into the criminal court of Cook county against the plaintiffs in error, Mary Csontos and Aladar Ponta. The first count charged them with larceny of a ring of the value of $800, the property of Howard H. Hammond, and the second, alleging the same ownership, charged them with receiving the ring knowing the same to have been stolen. The defendants entered separate pleas of not guilty, and upon a trial the jury returned two verdicts, one finding the defendant Mary Csontos guilty of larceny and finding the value of the property to be $375, and the other finding the defendant Aladar Ponta guilty of receiving stolen property of the value of $375, and in each verdict recommending the defendants to the mercy of the court. Motions for a new trial and in arrest of judgment were made and denied and judgments were entered on the verdicts. The record has been brought to this court by a writ of error.

The following facts were proved and not controverted: The defendant Mary Csontos came to this country from

Austria in October, 1912, having at that time no knowledge of the English language. Two days after her arrival she was employed by Mrs. Henry H. McKay at 7204 Sheridan road, Chicago, and continued in that employment, doing all the housework, until February, 1915. In April, 1914, Mrs. Shayne, a sister of Mrs. McKay, was living with her and lost a diamond ring. Mary Csontos was told that a ring had been lost, and Mrs. Shayne and Mrs. McKay remembered that it was worn at a luncheon at a restaurant and thought it might have been left at a party room at the LaSalle Hotel, where there was a party after the luncheon at the restaurant. About three weeks after the ring was lost Mary Csontos found it in the front yard at the house, which was on the corner of Kenilworth avenue and Sheridan road. She kept the ring and was wearing it in April, 1915, at a dance where the defendant Aladar Ponta, a musician, was playing. He had noticed the ring at dances where he had played and he then asked her what kind of a ring it was. She told him that she had found the ring around the porch in the yard where she was working and she did not think it was a diamond. She gave it to him to find out if it was of any value, and he took it to a jeweler, who took the stone out of the setting and pronounced it a diamond and gave Ponta $375 for it, of which sum Ponta gave Mary Csontos $150. Howard H. Hammond was a minor son of Mrs. Shayne, who lived with his father, her divorced husband, and she had been married again. He testified that his mother gave him the diamond, which was set in a ring, and delivered the ring to him but decided that he was not able to take care of it and so she had the diamond re-set in a small platinum ring so that she could wear it, and that while the diamond was his property he was not going to get it until he arrived at manhood. Mrs. McKay testified that her sister gave the stone to her son, Howard H. Hammond, and gave him possession for a while and then changed her mind and thought she had better not

let him have it until he got older, and he returned it and she had the diamond re-set in a ring for herself, and that the setting belonged to Mrs. Shayne and not to Howard H. Hammond, but the stone belonged to him. Besides these undisputed facts there was testimony of a detective that he had a talk with Mary Csontos indicating that she knew the ring belonged to Mrs. Shayne, but she denied that she made any such statement. There was also evidence of a detective of a conversation with Aladar Ponta which did not tend to prove anything.

Mary Csontos testified to her coming from Austria in October, 1912, and her employment by Mrs. McKay; that she never owned a diamond and did not know anything about platinum; that when she was cleaning on the front porch she was shaking a rug and the rug fell on the ground; that she went for the rug and found the ring; that Mrs. Shayne had told her she had lost a diamond ring downtown and thought she lost it in washing her hands in Marshall Field's store; that anyone could walk across the corner of the lot where she found the ring; that she kept the ring in her dresser drawer, which was never locked; that she never wore a ring on week days but wore this ring when she went out on Sundays; that she thought it was glass and did not know it had any value; that she gave the ring to Aladar Ponta in March, 1915, and told him she had found it and asked him if it was a diamond or glass; that he said he was going to try it, and found out that it was a diamond and sold it. Aladar Ponta, who was accustomed to play for dances, testified that he had noticed the ring on the finger of Mary Csontos and asked her what kind of a ring it was, but she said it was nothing of value,—glass, or something like that,—and that he proposed to find out, and she gave him the ring and he sold it. With regard to her opinion of the value of the ring, it should be remembered that while platinum is of great value it looks like a very cheap metal, and she was an ignorant servant girl.

Larceny is an offense against the owner of property, and the name of the party injured by the larceny must be stated, if known. The owner is so affected by the crime that his name becomes material to a statement of the offense in an indictment, and the ownership, being an essential element, must be proved as alleged. (*Willis* v. *People,* 1 Scam. 399; *Aldrich* v. *People,* 225 Ill. 610.) The ring, which was charged in the first count to have been stolen by the defendants and which in the second count was charged to have been received by them knowing that it had been stolen, was alleged to be the property of Howard H. Hammond, and there was not only a failure to prove the ownership as alleged, but the evidence for the People proved the contrary. The ring was owned by Mrs. Shayne, and if there had been any gift to her son, Howard H. Hammond, it would have been a gift *inter vivos.* It is essential to such a gift that it be absolute and irrevocable; that the giver part with all present and future dominion over the property given; that the gift go into effect at once and not at some future time; that there be a delivery of the thing given to the donee, and that there be such a change of possession as to put it out of the power of the giver to re-possess himself of the thing given. (*Telford* v. *Patton,* 144 Ill. 611; *Williams* v. *Chamberlain,* 165 id. 210.) The evidence was that Mrs. Shayne proposed to give to her son a ring in which the diamond was set and delivered it to him but changed her mind and took it back with his consent, with a declared intention of giving it to him when he was older and could appreciate its value. The gift was at no time irrevocable, since the son conceded the right of his mother to take the ring back, and she not only took it back but had the diamond re-set in a platinum ring for herself. Howard H. Hammond never had possession of the ring alleged to have been stolen and had no present or prospective claim to it. What became of the ring of which he once had possession did not appear, but the diamond was taken from it and set in another plati-

num ring by his mother. Mrs. McKay testified that the ring belonged to her sister and did not belong to Howard H. Hammond but the diamond belonged to him. There was no evidence that Howard H. Hammond owned the ring.

The utility of instructions to juries is to advise them concerning the rules of law applicable to the facts of each case, and their efficiency depends upon the ability of the jury to make such application. The instructions given at the instance of the People in this case were all abstract in form and had no natural connection with the evidence. They consisted mainly of the statutes relating to the crime of larceny, and as a series were in no way adapted to the case. The defendants asked the court to give an instruction, numbered 10, that it was incumbent upon the prosecution to prove that the ring alleged to have been stolen was in the possession of Howard H. Hammond at the time of the alleged larceny, and the court modified it so as to state that the prosecution was required to prove that the ring was in the possession, actual or constructive, of Howard H. Hammond. An instruction numbered 11 tendered by the defendants stated as a rule of law that there could be no larceny without a trespass and there could be no trespass unless the property was in the possession of the person from whom it was charged to have been stolen, and that is the rule of law. (*People* v. *Hoban,* 240 Ill. 303.) The court modified the instruction so as to state that there could be no larceny without a trespass and no trespass unless the property was either actually or constructively in the possession of the one from whom it was charged to have been stolen. There may be a larceny of property which has been lost provided there is an intent of the finder to steal it, so that the taking becomes felonious. All personal property not abandoned is by construction of law regarded as in the possession of some person, and the law regards the possession of an article which is lost as being that of the legal owner who was previously in possession, until the arti-

cle is taken into the actual possession of the finder. But jurors are not learned in the law, and the court should never instruct them in legal phrases not understood by a layman, by which they would be confused and misled. If the finder does not know who the owner is and there is no clue to the ownership, there is no larceny although the finder takes the goods for himself and converts them to his own use. (*Tyler* v. *People,* Breese, 293; *Lane* v. *People,* 5 Gilm. 305.) If the finder knows who the· owner is or has a reasonable clue to the ownership, which he disregards, he is guilty of larceny. There was no identifying mark on the ring, and Mary Csontos testified that she had no idea who the owner was or that the ring was of any value but had been told by her friends that it was a fifty-cent ring. The court erred in modifying the instructions and leaving it to the jury to find out what was constructive possession in the law. The facts which constitute constructive possession in consequence of a rule of law different from the essential nature of possession as commonly understood should have been explained if the jury were to be advised on that subject.

In an instruction given at the request of the People the court told the jury that the ownership of property, if the property had been bailed, might be laid in the bailor or the bailee, and if the ownership was laid in the bailor and the proof showed without reasonable doubt that it was taken from the bailee, the proof supported the allegation in the indictment that it was the property of the bailor. The instruction was not only abstract in form but to the jury was senseless and unmeaning. If the instructions as to constructive possession and bailments were regarded at all they could only mislead the jury.

The judgments are reversed and the cause remanded.

*Reversed and remanded.*

FARMER, CARTER and COOKE, JJ., dissenting.