(No. 20627.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* KENNETH COPE, Plaintiff in Error.

*Opinion filed October 23, 1931.*

JOHN J. BYRNE, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

By this writ of error we are called upon to review the record of the conviction of Kenneth Cope in the criminal court of Cook county of the crime of larceny. The brief and argument of the plaintiff in error question the sufficiency of the evidence to sustain the verdict, the admission in evidence of an alleged confession of the defendant, and the fairness of his trial. The record of a previous trial of the case was reviewed in *People* v. *Cope,* 335 Ill. 466.

Earl F. Carson left his automobile parked on South Halsted street, in Chicago, about 8:30 in the evening of February 24, 1928. On his return about three hours later it was gone. He reported these facts to the police, and he next saw his car about 10:30 the next morning at the Meacham Brick Company's yards on Seventy-sixth street, five or six blocks from where he had left it. It was stripped and the five tires which had been on it and other accessories were gone. In the forenoon of February 27 the plaintiff in error and Michael Scanlan, who was indicted with him, were arrested in the building at the northeast corner of Seventy-ninth and Aberdeen streets, and the five tires, together with other accessories, were found in the small basement room in which the men had been sleeping on blankets and quilts, there being no bed in the room.

At the trial a statement in writing, consisting of questions and answers, signed by the defendant, was produced by the prosecution. The defendant objected to its introduction in evidence on the ground that he was beaten and threats of violence were made against him and that he denied making certain parts of it. Thereupon, out of the

presence of the jury, the court heard the evidence of the defendant and officers Coen and Kelly on these objections. Cope testified that the signature to the statement was his and he signed it at the Gresham police station. Officers Coen and Kelly were there and no other person. They asked him where he lived and where he worked, and he gave them all the information as to where he worked, and so far as he knew that was all he did tell them. Michael Grady, the chief of detectives, was the one who beat him up, and he had bruises all over his shins and body. He was in the captain's office at the Gresham police station. He did not see Coen and Kelly there. He believed, though, Coen was there but he did not see Kelly. The desk sergeant was there, but Cope did not know his name and he did not touch Cope. Grady hit him and kicked him on the shins and made him bend down and then hit him on the back. This was the very morning he was brought in there, and he did it because Cope would not say anything. He wanted Cope to admit he had murdered a man, but he did not admit anything and did not tell anything about the car in this case. The morning he was brought in Grady began to strike him and wanted to know what he was doing running away from the place where officer Lillis was murdered. Grady did not beat him any more after that morning. The next day Grady brought him up-stairs and wanted him to tell something about the other lads, but he knew nothing about them and nobody beat him after the first morning he was brought in. These two officers were present but did not threaten to beat him. There was one other detective there who beat him a couple of times with his fists because he wanted him to say he took the car and wanted to know how many cars he took. On cross-examination by his counsel Cope testified that Grady was the first man who beat him at the station; that he put Cope down on a chair and asked him if he was going to talk, and when Cope said he had nothing to say, Grady kicked him on the shins, bent him

back by the neck, got up and hit him on the stomach and hit him with a blackjack on his knees and legs. This lasted about half an hour. He was brought out of the cell several times and was threatened and beaten. Then he said in response to a question by the court, the day Grady beat him was the morning of February 27 and he was not beaten after that. Officers Coen and Kelly testified, the former denying specifically all the statements made by Cope in his testimony regarding any violence used upon him and Kelly stating that he typed the questions and answers contained in Cope's statement, which was taken on February 29, soon after midnight. Officer Coen asked the questions, the statement was reduced to writing by Kelly, and Cope read it and signed it. The court overruled the objection to the statement, except as to certain parts of it, and it was read to the jury, omitting those parts referring to other offenses which the court held incompetent, which were indicated on the writing by pencil marks. The parts of the confession considered competent were read to the jury.

The statement purported on its face to have been taken about 4:00 A. M., February 29, 1928, by officer Kelly, questions asked by Thomas W. Coen, officer John J. Mulree present. It contained this question asked by Coen early in the examination: "It is my duty to inform you that any answer you may make to questions asked of you here may be used for or against you in court. Now, being so warned, do you still want to make a statement?" The answer was "yes." The statement continued, in substance, that the car in question was taken from the rear of Schubert's department store on Friday night, February 24, 1928, by the plaintiff in error and Don Tealing, who drove it around on the South Side boulevards until about 11:30, when the plaintiff in error went to a pool-room where he had been earlier in the evening and there met Michael Scanlan, who asked him what he was doing. Cope told him he had a stolen car which he had just left at Meacham's brickyard. Scanlan

asked him if the tires were any good, and Cope said he did not look. The two went to the car and removed the tires, tubes and rims from the wheels and left them beside the railroad tracks. They then went back to Seventy-ninth and Halsted streets, where Scanlan met a Yellow-cab driver, with whom they returned to the brickyard, put the tires in the cab and carried them into the basement where Cope was arrested. He slept in the basement that night and other nights until he was arrested.

Grady did not testify in the preliminary hearing by the court, in the absence of the jury, in regard to the voluntary character of the confession and the violence and abuse exercised by him against the prisoner prior to his making and signing the confession offered in evidence. The court adopted the unusual course of himself conducting the examination of the two officers who took the statement, and of the defendant. When the confession was objected to for the reasons stated, the court said, "The police officers are here who obtained the confession and I will question them as to what took place," and he did so. Each testified in response to the questions that the defendant was not struck, beaten or mistreated in any way in his presence and that he saw no bruises on the defendant and heard no complaint from him of mistreatment. The court also questioned the defendant at some length about the confession as well as other subjects. Cope testified that Coen did not threaten him but before the confession he had been beaten by Grady, but Grady was not called. The defendant's counsel, after the court had finished his questioning, asked a few questions of the defendant, eliciting answers that the same day Grady beat him he was taken up-stairs to the sergeant's room, and the desk sergeant, whose name he did not know, hit him a couple of times. The desk sergeant was not called, but the court remarked, "Now, if you want to commit perjury here I can punish you for that; there is nothing in this; it is the same old defense." The defend-

ant's counsel stated that he would like to ask him if he was beaten at any other time before he made the confession, but the court said, "He has told us all he can about that; now, do not put anything into his mouth or you might be an accessory after the fact." Counsel replied, "I am not afraid of anything; I am trying to do my duty here as I see it," and the court said, "He has told us all about it."

The overruling of the objection to the confession was erroneous. Confessions are competent evidence only when voluntarily made. (*People* v. *Buckminster*, 274 Ill. 435.) The burden of proving that a confession was voluntarily made is upon the People, and when the objection is made that it was not voluntary, the prosecution is required to show the circumstances under which it was made. A confession objected to because involuntary is not admissible in evidence unless shown to have been obtained without the use of violence, threats, intimidation or promises. This rule requires that all persons present at the time the confession was made be called as witnesses. Where there is evidence tending to show the use of violence, threats, torture or promises, all the persons having any authority or control over the person making the confession and charged by the evidence with the use of such means must be called, if possible, and examined as witnesses before the confession may be admitted. *People* v. *Rogers*, 303 Ill. 578; *People* v. *Sweeney*, 304 id. 502.

The objection to the confession having been overruled, such parts of it as were indicated by the court as admissible as evidence under the issue in the cause were read to the jury. Having been admitted as competent evidence either party had the right to produce before the jury the same evidence as had been submitted to the court for the determination of the preliminary question of competency and all other evidence of facts and circumstances relevant to the confession or affecting its weight or credit as evidence. When a confession has been admitted in evidence its weight

and value as evidence are for the jury. *People* v. *Gukouski,* 250 Ill. 231.

In accordance with these rules of procedure, during the trial of the case, after the confession had been held competent, received in evidence and read to the jury and after the prosecution had closed its case, the defendant testified in his own behalf, among other things, in regard to the facts and circumstances under which the confession was obtained and the manner of his treatment before the confession. He testified that on the 28th he was taken out of his cell up to the gymnasium and they chained his ankles together and strung him up. The desk sergeant, whose name he did not know, did that. They had handcuffs which they put across both his ankles and put a board between his ankles and he was suspended from one of those iron bars in the gymnasium. The court said, "This defendant was questioned at length in the chambers and he never related anything about being suspended from iron bars." Exception was then taken to the comment of the court, and he continued, "The last statements of the witness about the iron bars will be stricken out." The witness, after a motion by his attorney to withdraw a juror had been overruled, continued, that when he was suspended by his ankles from this bar Grady and the desk sergeant were there. Grady applied the manacles to his ankles and the desk sergeant hit him on the back twice with his fist. Grady did the most of it. Cope was suspended in that position for about five minutes and then taken down. On the 29th, between 2:00 and 3:00 o'clock in the morning, he was taken out of the cell and officer Coen told him they wanted him to make a statement. He told them he knew nothing about it and could not give them any information. He was brought into the office and they told him to sign several sheets of paper or take the consequences, and he signed the papers rather than take the consequences. No one beat him that day. That was 2:00 or 3:00 o'clock in the morn-

ing. He signed People's exhibit "1" but did not read it before signing. He denied specifically that he was asked the questions and made the answers included in the confession.

Not only was the confession admitted in evidence upon an insufficient showing, but the court erred in striking out the testimony of the defendant as to the fettering of his ankles and his suspension by the heels from an iron bar and in discrediting his testimony by volunteering the statement that he was questioned at length in chambers and never said anything about being suspended from iron bars. The jurors had been excluded from the hearing before the court as to the competency of the confession for the express purpose of keeping that preliminary examination from their knowledge, and if in the further progress of the case it became proper to inform them of what occurred or did not occur, what was testified to or was not testified to at that hearing, it was no part of the judicial function for the judge by his statement, unsworn and not subject to cross-examination, to furnish that information. The defendant's statement that he was shackled and strung up by the heels and was beaten by the chief of detectives of the city of Chicago and the desk sergeant at the police station to force a confession from him was competent evidence, and current history indicates that it was not manifestly incredible. The court was not justified in treating it as a statement of a fact contrary to the course of nature. If the statement were not true, if the defendant had testified directly to the contrary in the preliminary hearing before the court, the defendant had the right to give his version of the matter and explain or reconcile, if possible, any apparent inconsistency. In fact, he said on cross-examination that the statement he made to Judge Gemmill and the statement he made a few minutes ago were the same thing, and that he was not asked in Judge Gemmill's chambers about his being hung up for four or five minutes. Grady, the chief of detectives, was called in rebuttal and testified that he did not

on February 28, or at any time, strike or beat the defendant and did not hang him up by the heels with handcuffs around his ankles and did not see anyone else beat him. The desk sergeant who, the defendant testified, participated in beating him when he was hung up was not called and did not testify.

The confession was held competent and admitted in evidence on an insufficient showing, since all who are charged by the testimony to have participated in beating and offering violence to the defendant were not called and examined. The defendant did not have a fair trial, because the court, instead of leaving to the jury the question of the weight and credit to be given to his testimony, volunteered his own statement of the fact that the defendant's testimony on the witness stand differed from his testimony before the court in chambers in that the latter contained nothing about being suspended from iron bars, and of his own motion struck out the testimony before the jury about the iron bars. The effect of this was to inform the jury by the mouth of the court of what took place out of their presence, in violation of the constitutional right of the defendant to be confronted by the witnesses and to cross-examine them, and practically to exclude the evidence as untrue and to give to the jury the court's view of the weight and credit to be given the defendant's testimony, in violation of the fundamental doctrine of the common law that juries answer to questions of fact and judges to questions of law, the most recent declaration of which by this court is found in *People* v. *Bruner*, 343 Ill. 146. Even if the court believed the testimony of the defendant to be false, and even if it were false, as the court believed, and the defendant guilty not only of larceny but of perjury, the question was for the jury and not for the court. This is not a case in which it can be said that the errors committed were not prejudicial because no other verdict could have been rendered. Perhaps no other verdict would have been rendered

if the defendant's right to the jury trial guaranteed him by the constitution had been granted him, but the question presented by this record goes deeper than whether the defendant in this case is guilty of the crime charged, and that question is whether in the trial of cases in the criminal courts of this State the rules of law established to protect the rights of persons charged with crime may be ignored and all errors cured by the statement that the defendant was clearly proved guilty and the errors were therefore not prejudicial. The object of a trial is to determine the question of the guilt of the defendant, and we have often said that the law does not authorize one method for the trial of guilty persons and another for the trial of innocent persons. This trial violated the fundamental right of the defendant to a jury trial.

The plaintiff in error argues that the automobile having been left unguarded in a public highway the taking of it was not larceny, citing *Tyler* v. *People,* Breese, 293, *Lane* v. *People,* 5 Gilm. 305, *People* v. *Csontos,* 275 Ill. 402, and sections 27, 28, 34 and 35 of chapter 50 of the Revised Statutes, on estrays and lost property. The sections mentioned refer to the duty of the taker-up of estrays or finder of lost property to take the action required by the statute to notify the owner and to the method by which such estrays or lost property, if not reclaimed by the owner, may be sold and the proceeds paid into the county treasury. The cases refer to the finding of lost articles of property where there is no knowledge, clue or evidence in regard to the ownership. Neither the statute nor the cases cited have any application to the facts in this case. An automobile parked temporarily on the street is not ordinarily lost property, and if it were, its license plates are a sufficient clue to its identity. This point is without merit. However, for the errors which have been mentioned the judgment is reversed and the cause remanded.

*Reversed and remanded.*