SCHWARTZ, Judge.
J. A. L. was adjudicated a delinquent on the grounds that he was guilty of burglary of a Radio Shack store and grand theft of its property. We have determined that the evidence does not support the burglary finding but conclude to the contrary as to the grand theft charge. Hence, we reverse in part and affirm in part.
At about midnight on July 4, 1980, J. A. L. and three other juveniles, including his wife, were seen by a police officer walking on N.W. 7th Street in Miami. They had nothing in their hands. A short time later, they emerged from an alley carrying pieces of apparently new stereo equipment. One hurriedly left the scene. When the officer questioned those remaining, including J. A. L., the respondent stated — and later testified — that they had taken the material from a garbage dumpster in the alley. An immediate investigation revealed that the dumpster was behind a Radio Shack which had obviously been burglarized through a large hole which was clearly visible in the rear of the building. Radio Shack employees confirmed that a large quantity of prop *71 erty had been taken from the store — including not only the pieces taken from J. A. L. and his companions, but others which were never retrieved, as well as additional items found still in the dumpster.
Although J. A. L. was charged with and found guilty of the burglary, the wholly circumstantial evidence was insufficient to demonstrate that he had either committed or aided or abetted in the commission of the break-in itself. The facts[1] obviously do not preclude the acceptability of J. A. L.’s express and implicit explanation of the incident — that not he, but unknown others, had committed the burglary; that they had placed the loot in and near the dumpster while transporting it from the scene; and that they had left some items behind, one of which was discovered and taken by the respondent. Indeed, it may be fairly said that J. A. L.’s version was not only not unreasonable, but not unlikely. In any event, the record certainly does not meet the high and familiar standards as to the quality of circumstantial evidence required to support the appellant’s adjudication for burglary. Thomas v. State, 374 So.2d 508 (Fla.1979), cert. denied, 445 U.S. 972, 100 S.Ct. 1666, 64 L.Ed.2d 249 (1980); McArthur v. State, 351 So.2d 972 (Fla.1977); R. A. L. v. State, 402 So.2d 1337 (Fla. 3d DCA 1981), and cases cited; compare Ridley v. State, 407 So.2d 1000 (Fla. 5th DCA 1981).
J. A. L.’s own story, however, demonstrates his guilt of the remaining charge. As he told the investigators and the court, he intentionally appropriated to his own use an obviously new and valuable item which he knew was not his and which plainly had been stolen from, or at least had not been voluntarily abandoned by its true owner. Under the established law, this conduct constituted a grand theft[2] of that property. Sec. 812.014, Fla.Stat. (1979); Burger v. State, 83 Ala. 36, 3 So. 319, 320 (1887) (“This charge asserted nothing more than that the horse could be the subject of larceny, even though, at the time, he had been removed, or had strayed from the premises of his owner. It is scarcely necessary to cite authorities in support of this proposition.”); Flemister v. State, 121 Ga. 146, 48 S.E. 910 (1904); People v. Csontos, 275 Ill. 402, 114 N.E. 123 (1916); Warren v. State, 146 Tex.Cr.R. 478, 176 S.W.2d 326 (1943) (cigar boxes stolen from sidewalk in front of store after delivery there); Taylor v. State, 62 Tex.Cr.R. 611, 138 S.W. 615 (1911), and cases cited; Annot. — Stolen Money or Property as Subject of Larceny or Robbery, 89 A.L.R.2d 1435 (1963); Annot.—Larceny by Finder of Property, 36 A.L.R. 372 (1925); 52A C.J.S. Larceny §§ 14, 17 (1968); W. LaFave & A. Scott, Handbook on Criminal Law § 85 (1972).
For these reasons, the finding of guilt of burglary is stricken from the order under review, which is otherwise affirmed.
Affirmed in part, reversed in part.

. In addition to what has been related, the officer testified that J. A. L. and his wife were well-groomed and dressed, a fact inconsistent with having crawled through the hole on the way in or out of the Radio Shack. Moreover, in accordance with their claim that they were going to catch a bus home after having eaten at a nearby Burger King, they seemed to have no vehicle available to remove the numerous bulky items taken from the store, including many which were already inexplainably gone.

. There was evidence that the amplifier J. A. L. was carrying was valued at over $100.