(No. 35526.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LOUIS WRIGHT, Plaintiff in Error.

*Opinion filed January 23, 1962.—Rehearing denied March 23, 1962.*

GEORGE W. MCBURNEY, appointed by the court, and FREDERIC F. BRACE, JR., both of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and JOHN T. GALLAGHER, and DEAN H. BILTON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Four indictments were returned against Louis Wright in the criminal court of Cook County. The first charged rape and the second charged burglary in connection with that rape; the third charged rape of another woman and burglary in connection with that rape. He was convicted on each of the four indictments after bench trials and was sentenced to ten to twenty years on each burglary indictment and to life imprisonment on each rape indictment. All four sentences run concurrently, and all four judgments have been brought to this court upon a single writ of error. The grounds urged for reversal are common to all of the cases, the People have not objected, and we see nothing to be gained by requiring a separate writ of error to review each judgment.

The defendant orally confessed the crimes, and testimony as to his confessions was introduced in each case. All of his contentions in this court center upon the circumstances under which his confessions were obtained. He was

arrested between 4:30 and 5:00 A.M. on March 22, 1957, by members of a Chicago Police Department "Task Force" which had been sent into a neighborhood where there had been a series of rapes of white women by a negro man or men. When arrested the defendant was crouched on a second floor porch in the rear of an apartment building where he had fled from police who sought to question him. After his arrest he was first taken to the Englewood Police Station, where a showup was held and the two victims of the burglary-rapes identified the defendant as the man who had broken into their homes and raped them. The evidence is in conflict as to whether the defendant was taken directly to Central Police Headquarters from the Englewood Police Station or whether there was an intervening stop at another police station. He arrived at the Central Police Station at approximately 11:00 A.M. on March 22, 1957.

The State's evidence indicates that the defendant was questioned at Central Police Headquarters briefly at 11:00 A.M., and also from 2:00 P.M. to 4:45 P.M. on Friday. The testimony of police officers, the assistant State's Attorney who took the defendant's unsigned confession in the Criminal Courts Building, and the court reporter who recorded it, is that the confession was made on Friday evening, March 22, at approximately 6:45 P.M.

The defendant, on the other hand, testified that he was not taken to the State's Attorney's office in the Criminal Courts Building until the afternoon of Saturday, March 23. At that time he refused to make a statement and was returned to Central Police Headquarters. He testified that he was again taken to the State's Attorney's office on Sunday, March 24, where his unsigned confession was taken in the presence of assistant State's Attorney Egan, Officer Cassidy, Paul Esling, a court reporter, and another unidentified officer. The defendant's account of what took place on Saturday and Sunday is contradicted by the State's witnesses who testified that, aside from a showup on Friday

night, when the defendant was identified for a second time by the two women who had been raped, the defendant was not disturbed. Both the defendant and the State agree that Louis Wright was never booked following his arrest and that he was not taken before a magistrate until Monday morning, March 25, some 76 hours after his arrest.

The defendant testified that during the more than three days which he was held by the police, he was beaten, threatened with bodily harm and death unless he confessed. The first of the alleged beatings took place during the ride to the Englewood Station following the defendant's arrest. He testified that the beatings continued both before and after the showup at the Englewood Police Station, but that he was not beaten while he was at the unnamed police station where he was fingerprinted. When he arrived at Central Police Headquarters, he was again questioned and beaten throughout Friday afternoon. The defendant testified that the beatings continued intermittently throughout Saturday, except for the trip to the State's Attorney's office. After a sleepless Saturday night punctuated by further beatings, the defendant testified that he was ready to confess to anything to save his life which was constantly threatened. The defendant further testified that one of the rape victims was at Central Police Headquarters on Saturday night and that a showup was held at that time. On Sunday, according to the defendant, he was again taken to the Criminal Courts Building. Before being taken to the assistant State's Attorney's office he was held in the bull pen where he was beaten and told that if he did not take advantage of this last opportunity to confess he would be killed. Because of these threats and the beatings to which he had been subjected, the defendant testified, he made a statement to the assistant State's Attorney but refused to sign it.

The defendant was unable to name the officers who beat him although he did identify some of the officers who testified. All of the officers who testified denied that any threats

or coercion were employed, but not all of the officers who were present at the critical times were called to testify. Officer McNulty, who was one of the arresting officers, testified that in addition to those witnesses called by the State, Deputy Chief of Detectives O'Sullivan and Officer Moriarty were present during the questioning at the Englewood Police Station. Neither of these officers was called to testify. Lieutenant Riordan and Officer Cassidy who participated in the investigation that was conducted at Central Police Headquarters both testified that Officers McMorrow and Bergen were present when the defendant admitted the crimes. Officer McMorrow's absence was satisfactorily explained but Officer Bergen was not called as a witness and no excuse was offered for his absence. In addition Officer Cassidy referred to Lieutenant Olson as one of those present on Friday afternoon, but he was not called as a witness.

The burden of proving that a confession is voluntary is one which the State must assume when the admissibility of a confession is questioned on the grounds that it was coerced. Only by producing all material witnesses connected with the controverted confession can the State discharge this burden. (*People* v. *Dale,* 20 Ill.2d 532.) In an unbroken line of cases originating with *People* v. *Rogers,* 303 Ill. 578, this court has enforced this rule. (*People* v. *Sweeney,* 304 Ill. 502; *People* v. *Spranger,* 314 Ill. 602; *People* v. *Holick,* 337 Ill. 333; *People* v. *Cope,* 345 Ill. 278; *People* v. *Arendarczyk,* 367 Ill. 534; *People* v. *Ickes,* 370 Ill. 486; *People* v. *Kraus,* 395 Ill. 233; *People* v. *Davis,* 399 Ill. 265; *People* v. *LaCoco,* 406 Ill. 303; *People* v. *Gavurnik,* 2 Ill.2d 190; *People* v. *Wagoner,* 8 Ill.2d 188; *People* v. *Jennings,* 11 Ill.2d 610; *People* v. *Sammons,* 17 Ill.2d 316; *People* v. *Dale,* 20 Ill.2d 532.) The facts of these cases and the history of the rule were recently re-examined by the court in *People* v. *Sims,* 21 Ill.2d 425, and its continuing validity was reaffirmed. As stated in the *Sims* case, "the persons who must be called as witnesses or whose absence must be ex-

plained are those whose testimony would be material on the issue of the voluntary nature of the confession." 21 Ill.2d at 432.

Applying this rule to the instant case, the testimony of both Officer McMorrow and Officer Bergen as to what took place at Central Police Headquarters was material. The assistant State's Attorney in the trial court recognized this and said "we will produce all witnesses to statements made at 11th and State." Care was taken to explain that McMorrow's absence was due to an operation, but no attempt was made to explain Bergen's absence. Nor was any explanation offered by the State for its failure to call Deputy Chief of Detectives O'Sullivan and Officer Moriarty, who were present when the alleged chain of coercion, which culminated in the defendant's confession, was set in motion.

At the very least these three officers should have been called to testify on the issue of the voluntariness of the confession. Materiality of witnesses in coerced confession cases is not limited to those physically present when a confession is actually made, but extends as well to those who were present when the alleged illegal conduct took place. *People* v. *Davis,* 399 Ill. 265.

The State did not satisfy its burden in this case, and the judgments must be reversed and the causes remanded for new trials.

*Reversed and remanded.*