THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RUBEN WILLIAMS, Defendant-Appellant.

(No. 53650; ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

First District—October 30, 1970.

Gerald W. Getty, Public Defender, of Chicago, (William J. Martin, James B. Haddad, and Theodore A. Gottfried, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle, Anthony M. Montemurro, and Lawrence J. Bolon, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE BURMAN delivered the opinion of the court:

The defendant, Ruben Williams, was indicted and convicted of the murder of Robert Fleming on October 15, 1967. The defendant was sentenced to serve a minimum of thirty-five and a maximum of fifty years in the Illinois State Penitentiary.

On appeal, the defendant contends (1) that the trial court erred in admitting each of five statements elicited from the defendant in violation of *Miranda v. Arizona* (1966), 384 U.S. 436, (2) that the admissible evidence does not prove that the defendant was guilty beyond a reasonable doubt, (3) that the prosecutor's statement of personal opinion in the closing argument constitutes reversible error, and (4) that the sentence imposed was grossly excessive.

We first consider the admissibility of two oral statements made by the defendant to Kenneth Fowler, an Indiana State Trooper. On October 15, 1967, Fowler investigated a traffic accident on the Indiana Tollway in which the defendant was involved. At the time of the accident the defendant was driving the automobile of the deceased, Robert Fleming. As a routine part of the investigation Trooper Fowler asked the defendant for identification. The defendant, who did not present a driver's license, gave Fowler a registration card bearing the name of Robert Fleming. After further questioning the defendant gave Fowler a credit card which also bore the name of Robert Fleming. Fowler then took the defendant to a police station for a breathalizer test. At the station Fowler read the following warning and waiver to the defendant.

## WARNING AND WAIVER

### Warning as to Rights

Before we ask you any questions, it is our duty as police officers to advise you of your rights and to warn you of the consequences of waiving your rights.

You have the absolute right to remain silent.

Anything you say to us can be used against you in court.

You have the right to talk to an attorney before answering any questions and to have an attorney present with you during questioning.

You have this same right to the advice and presence of an attorney whether you can afford to hire one or not. We have no way of furnishing

you with an attorney, but one will be appointed for you, if you wish, if and when you go to court.

If you decide to answer questions now without an attorney present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to an attorney.

## Waiver

I have read the above statement of my rights, and it has been read to me. I understand what my rights are. I wish to make a voluntary statement, and I do not want an attorney. No force, threats or promises of any kind or nature have been used by anyone in any way to influence me to waive my rights. I am signing this statement after having been advised of my rights before any questions have been asked of me by the police.

X
_____
Mark Witnessed

## Certification

I hereby certify that the foregoing warning and waiver were read by me to the person who has affixed his (her) signature above, and that he (she) also read it and signed it in my presence this 18th day of Oct. 1967, at 1:00 o'clock P.M. at LaPorte, Indiana.

_____
Signature—Police Officer

_____
Witness

After the defendant read the warning and waiver, he signed the waiver by marking an "x" on it in the presence of Fowler. Subsequently the defendant was taken before a justice of the peace and was jailed in lieu of fines under the name of Robert Fleming, on charges of reckless driving and driving without a license.

Trooper Fowler met with the defendant again on October 20, 1967. Prior to any questioning, Fowler read to the defendant the same warning and waiver which he had read to the defendant on October 15, 1967. The defendant refused to sign the second warning and waiver. According to Fowler the defendant then admitted in response to various questions that his name was Ruben Williams, that he had borrowed Robert Fleming's automobile, that he had met Fleming in a bar, that he and Fleming had gone to a hotel where they had had a relationship as a man

and woman, and that he and Fleming had had a disagreement. At this point the defendant refused to answer further questions and Fowler ceased questioning him.

The defendant points to the sentence in the warning, "We have no way of furnishing you with an attorney, but one will be appointed for you, if you wish, if and when you go to court" and contends that he was inadequately informed of his right to have appointed counsel present during the interrogation because the above quoted sentence in the warning negates the idea that a lawyer will be appointed prior to any questioning.

The rule in *Miranda v. Arizona*, 384 U.S. 436 at 444 is that

"\* \* \* Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."

■■ Law enforcement officials need not use any particular set of words and phrases to inform an accused of his rights as long as the words used impart to the accused a clear and understandable warning of all his rights. We agree with the 10th Circuit Court of Appeals when it wrote while considering the adequacy of similar *Miranda* warnings in *Coyote v. United States*, (10th Cir., 1967), 380 F.2d 305 at 308:

"Surely *Miranda* is not a ritual of words to be recited by rote according to didactic niceties. What *Miranda* does require is meaningful advice to the unlettered and unlearned in language which he can comprehend and on which he can knowingly act. We will not indulge semantical debates between counsel over the particular words used to inform an individual of his rights. The crucial test is whether the words in the context used, considering the age, background and intelligence of the individual being interrogated impart a clear, understandable warning of all his rights."

■■ The warnings which were read to the defendant informed him (1) that he had a right to remain silent, (2) that anything he said could be used against him in court, (3) that he had a right to talk to a lawyer before and during questioning, (4) that he had a right to a lawyer's advice and presence even if he could not afford to hire one, (5) that a lawyer would be appointed for him, if and when he went to court, and (6) that he had a right to stop answering questions at any time until he talked to a lawyer. The defendant by signing the waiver acknowledged that he had read the warning and that he understood his rights. The above warnings when read in combination, clearly and understandably informed the defendant that he was entitled to appointed counsel prior to questioning.

Other jurisdictions have considered the adequacy of warnings identical or substantially similar to the warnings given to the defendant. We agree with the conclusions of *Jones v. State* (Ind., 1969), 252 N.E.2d 572 (identical warning), *People v. Swift* (1969), 32 A.D.2d 183, 300 N.Y.S. 639 (substantially similar warning), and *Steel v. State* (1969), 246 Ak. 74, 436 S.W.2d 800 (substantially similar warning). We note too, that *Fendley v. United States* (5th Cir., 1967), 384 F.2d 923 (substantially similar warning), *Lathers v. United States* (5th cir., 1968), 396 F.2d. 524 (similar, but the warning did not state that the defendant was entitled to appointed counsel prior to interrogation), and *Square v. State* (1969), 283 Ala. 548, 219 So.2d 377, (substantially similar warning) reach contrary conclusions.

■■ The defendant next contends that his oral statement to Trooper Fowler on October 20, 1967, was improperly admitted because the evidence in the record does not demonstrate that he knowingly and voluntarily waived his rights prior to making the statement. The defendant did refuse to sign the written waiver on October 20, 1967, but a refusal to sign a written waiver is not by itself proof that a subsequent statement is involuntary. (*People v. Dewey* (1969), 42 Ill.2d 148, 246 N.E.2d 232.) The voluntariness of a statement must be determined by an evaluation of the "totality of the circumstances," surrounding the giving of a statement. *Fikes v. Alabama*, 352 U.S. 191; *People v. Bey* (Ill. 1969), 259 N.E.2d 800.

■■ The defendant had made incriminating statements prior to his arrest and custodial interrogation when on October 15, 1967, he presented the deceased's registration card and credit card as identification to Trooper Fowler who was conducting a routine accident investigation. After the defendant was taken into custody on October 15, 1967, he was adequately warned of his rights. He signed a waiver of his rights and he made a short statement. On October 20, 1967, he was again informed of his rights. He answered questions about his true identity and about the reason that he possessed an automobile owned by another person. He exercised his right to remain silent when the questioning turned to possible conflicts with Robert Fleming. The "totality of the circumstances" surrounding the giving of the statement to Trooper Fowler on October 20, 1967, demonstrates that the defendant was adequately informed of his rights, that the defendant knew his rights, and that the defendant voluntarily made the statements.

We next consider the admissibility of the two oral statements made to the Chicago police and the written statement made to the Assistant State's Attorney. William Havensek, a Chicago homicide investigator testified that on October 21, 1967, he transported the defendant from

La Porte, Indiana, to Chicago; that when they reached Chicago, he advised the defendant of his rights prior to any questioning; and that the defendant acknowledged that he knew his rights.

When first questioned by the Chicago police, the defendant told the police that he and the deceased had gone to a hotel for their sexual pleasure, that he had never been to the deceased's apartmnt and that a camera found in his possession was a gift from his brother. After the police confronted him with various evidence, the defendant stated that the deceased had telephoned him on the evening of October 14; that he had gone to the decedent's apartment; that while at the apartment he and the deceased had had drinks, had taken pills and had had sexual relations; that he and the deceased had argued; that he had picked up a lamp and had struck the deceased twice on the head, and that he had taken the deceased's keys and had driven away in the deceased's auto-mobile. The defendant then indicated that he wished to make a written statement, and the police notified the State's Attorney's Office.

Clark M. Donigan, an Assistant State's Attorney, testified that on October 21, 1967, he went to a police station, talked to policemen, and before questioning the defendant, advised him of his constitutional rights by reading from a card prepared by his office. He advised the defendant that if he needed and could not afford a lawyer, the State would supply one. The defendant stated that he wanted a lawyer and did not want to make a statement. The interrogation ceased. After a while, the defendant voluntarily stated that he did not want a lawyer. The written transcript of the statement reveals the following:

"Mr. Donigan: All right. Well, Ruben, I told you about a lawyer and I told you if you haven't got the money, the judge or someone of the officers will appoint a lawyer to defend you, but we are here, we have no lawyer here. But your case will come up in court Monday, maybe and you can ask for a lawyer there and the judge will give you a lawyer. Now, you still want to make the statement without a lawyer being present here?
Ruben Williams: Yes, I'll make one.
Q. You will what?
A. I'll make one."

■■ The defendant contends that the written statement to the Assistant State's Attorney was inadmissible because the interrogation continued after the defendant requested counsel. The defendant has an absolute right to the presence of an appointed or retained attorney during a custodial interrogation. (*Miranda v. Arizona.*) The fact that the defendant requests the assistance of an attorney, however, does not preclude the defendant from subsequently making a statement without

an attorney present if the statement is made knowingly and voluntarily. The state has a heavy burden to demonstrate that the statement was made knowingly and voluntarily. (*Miranda v. Arizona.*) The defendant was repeatedly and adequately informed of his rights, and the defendant specifically stated that he would give a written statement without an attorney present. There are no allegations that the statement was coerced. The record in this case demonstrates that the statement was made both knowingly and voluntarily.

The defendant next contends that the two oral statements made to the police and the written statement made to the Assistant State's Attorney should be excluded as the fruit of the unlawfully obtained statement to Trooper Fowler on October 20, 1967. We need not consider this contention because we have held that the statement given on October 20, 1967, was lawfully obtained.

■■ We find no merit to the contention that the lawfully admitted evidence is insufficient to sustain the conviction. In this argument, the defendant erroneously assumes that we will hold that the five statements were improperly admitted and that the other proof might only sustain an auto theft conviction.

■■ It is next contended that the prosecutor's injection of his personal opinion into the closing argument deprived the defendant of a fair and impartial trial. The defendant complains of the following remarks:

"I would like to say that Mr. Abrams could almost make you think that limburger cheese makes you smell like Chanel Number 5 but not quite. This man, this defendant is guilty beyond any reasonable doubt. I pray to God that Mr. Stamos and myself can make you understand the evidence the way we do, because there is no doubt, based on this evidence, that this man is guilty of murder."

The defense counsel objected to these remarks as an expression of a personal belief, and this objection was sustained. The jury was also fully instructed that counsel's comments were not evidence and that they should disregard any statement or argument made by the attorneys which was not based on the evidence. It is impossible to lay down a general rule in regard to what shall or shall not be said in argument to the jury, and what remarks are laid to the door of argument made by the defense. We do not believe that these remarks in the context of the trial so prejudiced the defendant that a reversal is required.

■■ It is also contended that the sentence imposed was grossly excessive. The defendant was convicted of murder and was sentenced to serve 35 to 50 years in the Illinois State Penitentiary. We are urged to exercise the discretionary authority granted to us under the Supreme Court Rule 615(b) to reduce sentences. Sentences are to be proportion-

ate to the seriousness of the offense. (Ill. Rev. Stat. 1967, ch. 38 par. 1—2(c).) The involved sentence is within the statutory limits. When a sentence is imposed within the limits prescribed by statute, a reviewing court will not disturb that sentence unless it appears that the penalty imposed constitutes a great departure from the fundamental law, its spirit, and its purpose or that it is manifestly in excess of the proscription of Article II, Section 11 of the Illinois Constitution requiring that all penalties be proportioned to the nature of the offense. (*People v. Loyd* (1970), 125 Ill.App.2d 196, 260 N.E.2d 63.) The trial court in a hearing on aggravation and mitigation commented that it took into consideration the defendant's age and the fact that he had an inconsequential record of prior wrongdoing and for those reasons he did not follow the State's recommendation of a much larger sentence. The trial court is in a better position to make a sound determination as to the punishment to be imposed than are courts of appeal. (*People v. Taylor* (1965), 33 Ill.2d 417, 211 N.E.2d 673.) Upon a complete review of the record we cannot say that the court's sentence was improper.

The judgment of conviction and sentence is affirmed.

Judgment affirmed.

MURPHY and ADESKO, JJ., concur.