THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EUTUES WHITE, Defendant-Appellant.

(No. 71-70;

Fifth District—March 29, 1973.

Paul Bradley, of Defender Project, of Mt. Vernon, (Kenneth L. Jones, of counsel,) for appellant.

Robert H. Rice, State's Attorney, of Belleville, (Philip G. Feder, Assistant State's Attorney, of counsel,) for the People.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant appeals from a judgment of the Circuit Court of St. Clair County sentencing him to the Illinois State Penitentiary for a minimum of 199 years and a maximum of 200 years after a jury had found him guilty of the crime of murder.

On November 27, 1968, Bruce Reinheimer was employed at a gasoline station in East St. Louis, Illinois. At approximately 10:00 P.M. that evening, he left the station to service a car and never returned. His body was found later that night in Centreville, Illinois. The cause of death was a gunshot wound to the head. There were no witnesses to the crime.

The defendant, Eutues White, was arrested on the morning of May 24, 1969 and incarcerated in the East St. Louis jail by two officers of the East St. Louis Police Department. He was interrogated for several hours on that day, the morning and afternoon of the following day and in the morning of the next day. In the afternoon of May 26, 1969, the defendant signed a formal statement which contained his written waiver of the rights afforded him under the decision of the United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, and a confession to the murder of Bruce Reinheimer. Later that day the defendant allegedly reenacted the crime in the presence of police officers and the State's Attorney. Prior to the trial a hearing was held on defendant's motion to suppress the confession. This motion was denied. At the trial the defendant testified that he did not kill Bruce Reinheimer, that he did not remember giving the confession in question, and that he did not remember re-enacting the crime.

The first issue is whether the trial court committed reversible error in allowing the introduction of irrelevant and immaterial testimony which inflamed the passions and prejudices of the jury against the defendant.

The State's first witness was the father of the deceased. The defense objected to his testimony on the grounds that the only relevant testimony that he could offer, that his son was dead, would be outweighed by the prejudicial effect his testimony would have on the jury. The defense also offered to stipulate that the witness's son was dead. The court overruled the objection, provided the State's Attorney could advise the witness not to make any sort of emotional outburst. During the questioning of the deceased's father, the witness in response to a question of whether he had any children, stated that he had one boy left and that one was killed. When asked how old the deceased was when he was killed, he responded

"seventeen years, five months and six days". Later, in questioning, the State's Attorney again asked the witness how old the son was at the time of his death. The response was the same, "seventeen years, five months, six days". During closing argument the State's Attorney made a reference to the youth of the deceased. He said, "This is a seventeen year old boy. He was just a part-time man who had just started on his career in life."

The appellant argues that such testimony by the father, especially the detailed account of the age of his deceased son was evidence introduced to inflame the passions of the jury against the defendant. In support of his argument the appellant draws an analogy to a line of cases which hold that testimony concerning the family left behind by the deceased is so inflammatory that its introduction was reversible error. (*State v. Bernette*, 30 Ill.2d 359.) The rule set down in *Bernette* was that when testimony elicited in a murder case concerning a family left behind by the deceased was not elicited incidentally, but presented in such a manner as to cause the jury to believe it as material, its admission is highly prejudicial and constitutes reversible error. (See also *People v. Washington*, 54 Ill.App.2d 467, and *People v. Tajra*, 58 Ill.App.2d 479.) Although there is an obvious difference between testimony concerning the family left behind by the deceased and testimony which stresses the youth of deceased at the time of his death, certainly a valid analogy can be drawn between the two. For the purpose of both types of testimony when not elicited incidentally is to prejudice the defendant in the eyes and minds of the jury.

However, there is another line of cases since the holding in *Bernette* which tend to moderate *Bernett's* impact. For instance, in *People v. Jordan*, 38 Ill.2d 83, the court held that every mention of the deceased's family does not *ipso facto* entitle the defendant to a new trial, since in certain instances such a statement can be harmless. (See also *People v. Lee*, 44 Ill.2d 161 and *People v. Tillman*, 116 Ill.App.2d 24, for similar holdings.) The court in *People v. Vasquez*, 118 Ill.App.2d 66, explained that not all references to family require reversal. Rather, the court must determine if it is more than incidental. Likewise, all references to a deceased's youth would not require reversal, but once again the court must determine if it was incidental.

■ ■ There is also a line of cases which state that the State is entitled to present "life and death witnesses" to show that deceased's identity and to prove that he has died. Thus, in *People v. Speck*, 41 Ill.2d 17, the court said:

> "A further contention is that the court erred in admitting certain alleged prejudicial evidence. It is argued that the defendant was prejudiced by reason of the fact that close relatives of the slain

girls were called by the prosecution as 'life and death' witnesses to establish the identity of the girls and to the fact that they were deceased. Counsel for the defendant says that he was willing to stipulate to the identity of the girls and to the fact that they had met their death by criminal means. However, the defendant pleaded not guilty and the State had the right to prove every element of the crime charged and was not obligated to rely on the defendant's stipulation." 41 Ill.2d at 201.

The court went on to hold that there was no undue emphasis in the proof or in argument of the fact that the victims left a family surviving and cases such as *People v. Bernette* are not applicable. See also *People v. Cannon*, 49 Ill.2d 162, for a similar holding that life and death witnesses could be put on. Thus, the appellant's argument that he wished to stipulate that the deceased was in fact dead and to his identity was not something which he could assert by right, for, as said in *Speck*, the State had the right to prove every element in the crime charged and was not obligated to reply on the defendant's stipulation. Also, the State is allowed to put on "life and death" witnesses to establish the identity of the deceased.

■■ This issue would have to be regarded as very close. However, in our opinion, the testimony was not so material as to have a significant effect upon the conviction of the defendant. Therefore, we do not find reversible error on this issue.

The next issue is whether improper conduct on the part of the State's Attorney deprived the defendant of a fair trial.

■■ The appellant argues that since the State's Attorney participated in the alleged reenactment of the crime, it was improper for him to examine the witnesses concerning the reenactment. We have found no authority which holds that it is reversible error for a State's Attorney to participate in a trial after he was a participant in the reenactment of the crime for which the defendant is being tried. In the absence of any authority on this question, we cannot say that the State's Attorney committed error in so doing. However, we find that the State's Attorney's participation in the reenactment of the crime in the presence of the jury was highly undesirable.

■■ Appellant also stated that during his final argument, the State's Attorney argued not only the credibility of the State's other witnesses, but also forcefully put his credibility before the jury. Appellant argues that this is improper conduct and in support of this argument cites *People v. King*, 276 Ill. 138, wherein the prosecutor stated his personal knowledge of defendant's guilt and the court reversed because this put the prosecutor in the position of being a witness without giving the accused

an opportunity to cross-examine him. However, *People v. King* is not in point because the State's Attorney in the present case did not claim that he knew the defendant was guilty, but rather, during final argument claimed that he did not frame nor manufacture evidence. We therefore find no reversible error in this issue.

The next issue is whether the defendant was unfairly limited in examination of an expert witness.

■■ At the trial the defendant attempted to introduce the opinion testimony of a psychiatric expert that such an individual as the defendant, while under the influence of drugs or suffering withdrawal symptoms, might confess to a crime he did not commit. The State objected to the form of the question because it felt there was no evidence in the record that defendant was hallucinating at the time of his arrest. In support of his claim, the defendant cites *People v. Yonder*, 44 Ill.2d 376. The appellant contends that *Yonder* stated that a proper hypothetical question must be limited to facts supported by the evidence in the case, but may also be limited to those facts favorable to the questioner. However, *Yonder* also stated that in asking a hypothetical question, a party may include only proved facts. There were no proved facts that defendant was suffering hallucinations at the time he gave the confession.

The appellant also cites *People v. Penman*, 271 Ill. 82, in which it was held improper to exclude an expert's opinion as to the effects of cocaine poisoning based on an examination a day after the occurrence and without any specific testimony that the drug defendant had taken was in fact cocaine. However, *Penman* can be distinguished from the present case. For in *Penman* there was evidence of the defendant's condition symptoms, the cause of which a witness having expert knowledge of the effect of drugs might form a reasonable opinion which would be a proper basis from which the jury might reasonably infer the taking of a particular drug. In the present case there was no evidence of conditions and symptoms at the time of the interrogation and confession which would allow the jury to infer the taking of a particular drug.

■■ Rather, it is submitted that the court properly determined that there was insufficient evidence in the case to support the hypothetical question, and it has been held that the trial court has a wide degree of discretion in determining the admissibility of expert testimony. In *People v. Oberlander*, 109 Ill.App.2d 469, the court held:

> "It has been well established that the admissibility of expert testimony is to be determined by the trial judge and a wide latitude of discretion is given to the court in the determination of such admissibility, unless it is clearly and prejudicially erroneous." 109 Ill.2d at 471.

We find no merit in this contention.

The last issue is whether the trial court erred in denying defendant's motion to suppress the confession.

Defendant was arrested on the morning of May 24, 1969 by two police officers from the East St. Louis Police Department and incarcerated in the East St. Louis jail. He was questioned by a Lieutenant Johnson of the East St. Louis Police Department on the morning of the 24th and by William J. Stanis, an officer of the East St. Louis Police Department that afternoon. The record does not reflect whether he was advised at any time on that day of the rights afforded him by the decision of the United States Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 16 Ed.2d 694, 86 S.Ct. 1602. Defendant was questioned again in the morning and afternoon of the second day by Stanis, and again the record does not indicate whether or not he was advised of his *Miranda* rights any time on that day. He was again questioned by Stanis in the morning and the afternoon of the third day, May 26, 1969, and on that afternoon in the presence of Stanis and of Captain Cornelius O'Sullivan, signed a written confession to the murder of Bruce Reinheimer, which reads in part:

"DEPARTMENT OF POLICE
East St. Louis, Illinois

Date: May 26, 1969
Time Started: 12:45 P.M.
Time Completed: 1:30 P.M.

*STATEMENT*

I, Eutues White, have been advised by Capt. C. O'Sullivan and Det. W. Stanis that I have a right to remain silent and that I do not have to make any statement, answer any questions or talk to Them nor answer any question directed to me; I have further been advised that anything I say or any statement I give can and will be introduced into evidence in Court against me; I have been further advised that if I want an attorney to be present at this time or anytime hereafter, I am entitled to such attorney, and that if I cannot afford to pay for any attorney that an attorney will be furnished to me if I so desire, and that if I do desire an attorney I do not have to make any statement or answer any question until such time as an attorney has consulted with me.

Having been advised of these rights as above, I hereby voluntarily agree to make a statement, to answer questions asked of me and I waive my right to have an attorney as above set forth. I further state that I have not been threatened or mistreated in any fashion

nor have any promises of leniency been made to me in return for making this statement.

/s/ Capt. C. O'Sullivan                    /s/ Eutues White
     Witness
/s/ Det. W. Stanis
     Witness"

A fair reading of the record, including the language quoted in the above statement indicates that the *Miranda* warnings were given on the third day of defendant's incarceration, just before the statement was taken. The record does not reflect whether any *Miranda* warnings were or were not given on either the first or second day of his incarceration. Evidence surrounding the questioning on May 24 and 25 might disclose that the questioning was done without the *Miranda* warnings. Under such circumstances it could well be a deprivation of defendant's rights against custodial interrogation if the questioning resulted in an inculpatory statement or confession, notwithstanding the fact that the written statement, when prepared and signed following the questioning, contained the requisite advisory of rights and a waiver thereof. (*Westover v. United States*, 384 U.S. 436, 16 L.Ed 2d 694, 86 S. Ct. 1602). After the hearing, the motion to suppress the confession was denied without any findings of fact or conclusions of law.

In *Miranda v. Arizona*, the Supreme Court of the United States said at 384 U.S. 444-445:

"Our holding will be spelled out with some specificity in the pages that follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If,

however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him."

■■ Since there is no evidence in the record to indicate that the defendant was or was not given the required *Miranda* warnings prior to any questioning, we find that the evidentiary record before us is inadequate for a proper review of the propriety of the trial court's dismissal of the motion to suppress the confession. Under these circumstances we can reverse and remand the case for a new trial because the trial court erred in overruling defendant's motion to suppress the confession, or we can remand the case for a new full and complete hearing on the admissibility of the confession covering the time when defendant was first taken into custody up until the time he gave the confession.

The latter procedure was used by our Supreme Court in *People v. Mc-Guire*, 35 Ill.2d 219, where the court said at 229:

"\* \* \* We believe that this case should be remanded, not for a full new trial, but for a new hearing on the admissibility of the defendant's statement. At such a hearing both parties will have an opportunity to present further evidence. [Cases cited.]"

In *Townsend v. Sain*, 372 U.S. 293, 9 L.Ed.2d 770, 83 S.Ct. 745, the United States Supreme Court held that in *habeas corpus* proceedings instituted by a State prisoner, a Federal district court must hold an evidentiary hearing if the applicant did not receive a full and fair evidentiary hearing in a State court, either at the time of the trial or in a collateral proceeding; a Federal evidentiary hearing is required unless the State-court trier of fact has after a full hearing reliably found the relevant facts. The court went on to say at 372 U.S. 314:

"We hold that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing."

■■ Since the defendant did not receive a full evidentiary hearing in the trial court on the voluntariness of his confession, including the rights af-

forded him by *Miranda,* it is apparent that he could obtain such a hearing in the proper Federal district court if his conviction should be sustained by the courts of review of this State.

■■■■ This case is remanded to the Circuit Court of St. Clair County for a new full and complete hearing on the admissibility of the defendant's confession. If the confession is held inadmissible, the trial court will vacate the judgment of conviction and grant the defendant a new trial. If the confession is held admissible, the trial court will enter a new judgment of conviction (*People v. Stark,* 33 Ill.2d 616, 623; *People v. Jackson,* 31 Ill.2d 408, 411; *People v. McGuire,* 35 Ill.2d 219), and impose an indeterminate sentence pursuant to the sentencing provisions of the new Code of Criminal Corrections. (Ill. Rev. Stat. (1972 Supp.), ch. 38, pars. 1005—8—1(a), (b)(1) and 1008–2–4). *People v. Lobb,* 9 Ill.App. 3d 650; *People v. Mize,* 9 Ill.App3d 647.

Remanded with directions.

EBERSPACHER and JONES, JJ., concur.