THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EUTUES WHITE, Defendant-Appellant.

(No. 73-342; ▮▮▮▮▮▮)

Fifth District—September 16, 1974.

Robert Farrell and Margaret Maxwell, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert H. Rice, State's Attorney, of Belleville (Philip G. Feder, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

The defendant, Eutues White, was convicted of murder on a jury verdict in the circuit court of St. Clair County and sentenced to the Illinois State Penitentiary for a minimum term of 199 years and a maximum term of 200 years. On direct appeal this court remanded the cause to the trial court for a second evidentiary hearing to determine whether the defendant's confession was properly admitted into evidence and to resentence the defendant pursuant to the new Code of Criminal Corrections. (*People v. White*, 10 Ill.App.3d 914, 295 N.E.2d 300.) Subsequently, the trial court held a second evidentiary hearing to determine the admissibility of the defendant's confession. After determining that the confession was properly admitted into evidence, the trial court entered a new judgment of conviction and imposed a sentence of 66 to 198 years in the penitentiary. The defendant appeals therefrom.

The defendant raises two issues in this appeal: first, that the trial court erred in denying defendant's motion to suppress the confession and second, that the sentence imposed upon him by the trial court was excessive.

The defendant's first allegation of error is in two parts. The defendant contends first that the trial court erred in not suppressing defendant's confession because the evidence introduced at the second hearing on the motion to suppress establishes that the defendant attempted to exercise

his right to remain silent and to have the advice of an attorney and that such attempt was frustrated by the investigating officers. Next, it is asserted that the trial court erred in denying the motion to suppress the confession of the defendant because the State failed to call all material witnesses to the confession.

Only two witnesses testified at the second hearing on defendant's motion to suppress, Detective William Stanis and Captain William Johnson of the East St. Louis Police Department. Detective Stanis testified that the defendant was arrested on May 24, 1969, and that he was advised of his rights at that time. According to Detective Stanis, the defendant did not make a statement on May 24, 1969. Detective Stanis interrogated the defendant on two occasions on May 25, 1969, and he allegedly informed the defendant of his rights on each occasion. When Detective Stanis was asked how the defendant responded when he was informed of his rights for the first time on May 25, the detective stated, "In essence, he waived his rights, that he would talk to me." Next, Detective Stanis answered affirmatively to the question: "At that time did he [defendant] state to you that he wished to make a statement?" The witness then identified "People's Exhibit No. 1" as the statement made by the defendant on the morning of May 25, 1969. The witness testified that the defendant wished to make another statement on the afternoon of May 25, 1969. The witness identified "People's Exhibit No. 2" as that statement.

The two statements made by the defendant on May 25, 1969, pertain to the alleged murders other than the murder charged in the instant case. Detective Stanis stated that the defendant did not make a statement on May 24, or 25, concerning the alleged murder in the instant case.

Detective Stanis questioned the defendant for the third time on May 26, 1969. Detective Stanis testified that the *Miranda* warnings were given, and the defendant then made a statement concerning the charge in the instant case. He stated that the defendant seemed to understand his constitutional rights, that he knowingly chose to waive those rights, that no force, threats or promises were used to induce the defendant to confess and that the defendant never expressed a desire to stop the questioning or to consult an attorney.

Captain William Johnson, Detective Stanis' superior, testified that he talked with the defendant briefly on the day of his arrest, May 24, 1969. Captain Johnson informed the defendant of his rights and asked if he wished to talk. Captain Johnson testified that the defendant said, "he didn't want to talk about it; he would rather see a lawyer." The witness stated on three other occasions on direct examination that the defendant informed him, Captain Johnson, that he would rather talk to a lawyer. After the defendant said that he did not wish to talk, he was placed

back in a cell. Captain Johnson did not know whether the defendant made a phone call or talked to an attorney. Captain Johnson testified that he then turned the case over to Detective Stanis.

After Johnson had been excused as a witness, counsel approached the bench and an unrecorded colloquy took place, the defense counsel then informed the court that the defendant did not wish to testify. The State's Attorney then recalled Captain Johnson to the stand. Captain Johnson then gave the following testimony:

"Q. If someone asked for a lawyer it is the practice of your department to see that they are able to get a lawyer?

A. If he had asked for a lawyer I would have given him the phone there on my desk and let him use the phone.

Q. When you said that he wanted to speak to a lawyer, do you mean that he asked, that he wanted to retain a lawyer?

A. Well, I am not sure this is what the words that he said but he didn't want to talk, so therefore I had him put back in the cell block.

Q. Well, could it have been that you just assumed when you were seeing him that he wanted a lawyer, since he didn't want to talk?

A. Yes.

Q. If he had asked for a lawyer would Detective Standis [*sic*] have been notified of that fact.

A. He would have been, yes.

Q. Would any questioning have proceeded before he was able to talk to one?

A. Not to my knowledge."

On cross-examination, Johnson was asked the following questions and gave the following answers:

"Q. Captain you testified just a moment ago that you talked to Eutues White when he first came in, to see if you knew him— what you knew about him—that he chose not to talk, that he would rather talk to a lawyer; something to that effect is what you said?

A. Well—

Q. This is important, I want to get this straight; did he specifically ask you and say, I want a lawyer; I want to talk to a lawyer?

A. No, he never asked me about he wanted to talk to a lawyer; he didn't want to talk to me, so I would assume that he would rather have a lawyer there present, but he didn't ask for one, if he had he would have used the phone there on my desk.

Q. Now, I know that a lot of what police officers testify to is based upon years of experience in a routine way of doing things; you say, he had asked for a lawyer, I would have let him use my phone; can you say specifically in this case that Eutues White didn't ask for a lawyer?

A. No, he didn't ask for a lawyer."

The State's Attorney then recalled Detective Stanis. He testified that the defendant never asked for an attorney, that if the defendant had requested an attorney, he, Stanis, would have been advised and that if the defendant had requested an attorney, he, Stanis, would not have questioned the defendant further.

This court's decision in the instant case depends upon our interpretation of the foregoing testimony of Captain Johnson. On direct examination, Captain Johnson stated four times that when he informed the defendant of his rights on May 24, 1969, the defendant stated that he did not want to talk and that he would rather talk to a lawyer. After he was recalled as a witness, however, Captain Johnson stated that the defendant did *not* ask for a lawyer but merely stated that he did not wish to talk to the police. Captain Johnson answered affirmatively to the question: "Well, could it have been that you just assumed when you were seeing him that he wanted a lawyer, since he didn't want to talk?"

■■ It is argued that Captain Johnson's testimony is so contradictory and suspicious that it must be interpreted in the defendant's favor. However, it is only necessary that the prosecution make out a *prima facie* case that the confession was voluntary before the defendant is required to present some evidence. The trial court need not be convinced beyond a reasonable doubt that the confession was voluntary. (*Lego v. Twomey*, 404 U.S. 477, 30 L.Ed.2d 618, 92 S.Ct. 619), and its finding will not be disturbed unless it is contrary to the manifest weight of the evidence. (*People v. Prim*, 53 Ill.2d 62, 289 N.E.2d 601, *cert. denied*, 412 U.S. 918; *People v. Nemke*, 46 Ill.2d 49, 263 N.E.2d 97, *cert. denied*, 402 U.S. 924; *People v. Bunting*, 18 Ill.App.3d 99, 309 N.E.2d 316.) Since the defendant failed to proffer any evidence to contradict Captain Johnson, the trial court could, in its discretion, accept Johnson's testimony as true and, in view of the record before us, we are compelled to do likewise.

■■ Accepting Johnson's testimony as true we are presented with the question of whether a defendant who manifests his unwillingness to talk may, at a later time, be interrogated again by the police. The defendant cites *United States v. Crisp* (7th Cir. 1970), 435 F.2d 354, for the proposition that "an interrogator cannot seek retraction of the claim of silence after defendant has indicated that he did not wish to talk." Our supreme court was confronted with a factual situation similar to the one presented

in the instant case in *People v. Pittman*, 55 Ill.2d 39, 302 N.E.2d 7. Therein the court distinguished *Crisp* in the following manner:

> "In *Crisp* the defendant was subjected to immediate persistent interrogation even after he had indicated he did not wish to answer any questions pertaining to the crime of which he was charged. It is of interest that in *Crisp* defendant's statement, given several months after the improper questioning, was held admissible because defendant was fully informed of his rights." (55 Ill.2d at 55-56.)

The supreme court continued by finding that:

> "In the present case over 24 hours had elapsed between the time that Williams informed police he did not wish to speak and his agreement to give a statement. During this interval there is no evidence of any persistent police exhortations as condemned in *Doss [Doss v. Bensinger* (7th Cir. 1972), 463 F.2d 576, *cert. denied*, 409 U.S. 932] and *Crisp*." (55 Ill.2d at 55.)

Thereafter the court held that the trial court did not err in concluding that these statements were voluntarily made. Since there is no evidence that "any persistent police exhortations" of the defendant occurred in the instant case we find no merit in defendant's claim that his refusal to talk precluded the police from seeking a retraction at a later time. See also *United States v. Collins* (2nd Cir. 1972), 462 F.2d 792; *People v. Brookshaw*, 12 Ill.App.3d 221, 299 N.E.2d 20.

The defendant also contends that the trial court erred in ruling that the confession was admissible because the State failed to call all material witnesses at the second evidentiary hearing on defendant's motion to suppress. The defendant is correct in stating that, as a general rule, where the voluntary nature of a confession is brought into question the State must produce all material witnesses. (*People v. Armstrong*, 51 Ill. 2d 471, 282 N.E.2d 712.) The defendant is also correct in stating that Captain Cornelius O'Sullivan, a probable material witness in the instant case, was not produced at the second evidentiary hearing on defendant's motion to suppress. It is crucial, however, that the defense did not object to the State's failure to call Captain O'Sullivan in the trial court.

Prior to 1964 the law was uncertain as to whether the defendant had to object, at the hearing on a motion to suppress, to the State's failure to call a material witness. The following provision of the Criminal Code, however, became effective on January 1, 1964:

> "The burden of going forward with the evidence and the burden of proving that a confession was voluntary shall be on the State. Objection to the failure of the State to call all material witnesses on the issue of whether the confession was voluntary must be

made in the trial court." ( Ill. Rev. Stat. 1971, ch. 38, par. 114—11 (d).)

The committee comments to that section state, "The second sentence of subsection (d) clarifies a problem of considerable uncertainty in the Illinois cases." S.H.A. ch. 38,, § 114—11(d), committee comments, .at 215 (1970).

Three of the four cases cited by the defendant were decided prior to 1964. (*People v. Williams*, 26 Ill.2d 190, 186 N.E.2d 353; *People v. Wright*, 24 Ill.2d 88, 180 N.E.2d 689; *People v. Sammons*, 17 Ill.2d 316, 161 N.E.2d 322.) The only post-1964 case cited by the defendant is *People v. Armstrong*, 51 Ill.2d 471, 282 N.E.2d 712. That case is distinguished from the instant case, however, since the defense attorney did object to the State's failure to call a material witness in the trial court.

In *People v. Harper*, 127 Ill.App.2d 420, 262 N.E.2d 298, *cert. denied*, 404 U.S. 1062, it was held that the defendant's failure to object to the State's failure to produce a material witness at the hearing on the motion to suppress a confession precluded entertainment of the objection on appeal. Since the defendant in the instant case has failed to advance any reason which would permit circumvention of the foregoing statute we will not entertain his objection to the State's failure to call a material witness which is raised for the first time on review.

The defendant's final contention is that the sentence imposed upon him was excessive. Originally, the trial court imposed a sentence of a minimum of 199 years and a maximum of 200 years in the penitentiary. After remandment the trial court resentenced the defendant to a minimum of 66 years and a maximum of 198 years in the penitentiary.

In reviewing the sentence imposed by the trial court it is not our function to determine the propriety thereof based on what we might have done. Rather we are to determine whether the trial court exercised proper discretion in deciding upon the sentence imposed. (*People v. Taylor*, 33 Ill.2d 417, 211 N.E.2d 673; *People v. Moore*, 8 Ill.App.3d 1059, 291 N.E.2d 519.) In *People v. Latson*, 5 Ill.App.3d 1100, 284 N.E.2d 436, the court offered the following guidelines for the review of the sentence imposed by the trial court:

> "The power to reduce the punishment imposed by the trial court should be exercised with caution, and this court will not reduce a sentence unless it clearly appears the punishment is a departure from fundamental law, its spirit and purpose, or that the penalty is not proportioned to the nature of the offense. [Citations.]" 5 Ill. App.3d at 1104.

Since the defendant waived a presentence investigation his past criminal record is not before us. Its absence did not preclude the trial court

from considering other factors which are in the record. The defendant's signed confession describes a premediated crime of a particularly egregious nature, committed in a senseless and "cold-blooded" manner. The jury that convicted the defendant in 1969 recommended the death penalty.

■■ Sentences exceeding that imposed in the instant case have been upheld in severe cases. (*E.g., People v. Malcom,* 14 Ill.App.3d 378, 302 N.E.2d 352; *People v. Richards,* 120 Ill.App.2d 313, 256 N.E.2d 475.) Given the nature of the offense, the manner in which it was committed, and that the record discloses no mitigating circumstances, the sentence imposed by the trial court will not be reduced by this court.

For the foregoing reasons the judgment of the circuit court of St. Clair County is affirmed.

Judgment affirmed.

CREBS, J., concurs.

Mr. PRESIDING JUSTICE GEORGE J. MORAN dissenting:

The majority opinion poses the main question as to whether the trial court could find defendant's confession to be voluntary according to the manifest weight of the evidence. However, the principal question is whether or not the defendant at any time prior to the signing of his statement requested an attorney and if he did, the statement is inadmissible in evidence. *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 694, 86 S.Ct. 1602; *United States v. Blair,* 470 F.2d 331; *People v. Turner,* 56 Ill. 2d 201; *People v. Henenberg,* 55 Ill.2d 5.

The record discloses that the defendant is a borderline retardate with an I.Q. of 76, who signed a confession after 3 days of questioning by the police. He asked for an attorney on the morning of the first day of his questioning. The confession was therefore inadmissible.