THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CLEMENT WEST, Defendant-Appellant.

(No. 73-192; ■■■■■■)

Fifth District—February 4, 1975.

828

Paul Bradley and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Raymond F. Buckley, Jr., of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by the defendant, Clement West, from the orders entered by the circuit court of Madison County denying defendant's post-trial motion for a judgment *n.o.v.* or, in the alternative, for a new trial, and sentencing the defendant to 6 to 12 years' imprisonment.

The defendant contends that error occurred in the procedures followed at the hearing on the defendant's motion to suppress, that the State failed

to prove by the preponderance of the evidence that the statement was made voluntarily, and that the minimum sentence imposed upon the defendant must be reduced to 4 years. For the purpose of discussing the first two of defendant's contentions we will assume *ad arguendo* that defendant's alleged statement to police that he did wield a pistol while attempting to commit a robbery was material to the State's case against him.

■■ The two procedural errors defendant alleges to have occurred at his hearing on his motion to suppress concern the imposition of an inverse burden of proof and the failure of the State to produce all material witnesses. The defendant correctly asserts that the State has the burden of proving that the defendant's statement was made voluntarily. (Ill. Rev. Stat., ch. 38, par. 114—11; *People v. White*, 22 Ill.App.3d 180, 317 N.E.2d 323.) The defendant's allegation that the trial court "treated the defendant as party having" the burden of proof derives its origin from the fact that the trial court instructed the defendant, who although advised by counsel was appearing pro se, to call the first witness.

■■ When a motion is made to suppress a confession on ground that it is not voluntary, the burden of going forward with evidence and of proving voluntariness is on the State, but the duel burdens do not have to be met simultaneously. (*People v. Smith*, 71 Ill.App.2d 446, 219 N.E.2d 82, *cert. denied*, 386 U.S. 910.) Where the State makes *prima facie* showing that a confession was voluntary, the burden of producing evidence to show that confession was involuntary shifts to the defense and shifts back to the State only when defendant has produced evidence. (*People v. Smith; People v. White*, 22 Ill.App.3d 180, 317 N.E.2d 323.) While the trial court erroneously instructed the defendant to call the first witness, we do not believe that it necessarily follows that the trial court placed upon the defendant the burden of proving the involuntariness of the statement in question. Notwithstanding the fact that defendant here was required to proceed first, defendant elicited testimony from two officers that established a *prima facie* case of the voluntariness of the alleged confession. Both testified that defendant was advised of his rights several times. The trial court's closing remarks further repudiate the defendant's argument that the trial court improperly placed the burden of proof upon the defendant. Before rendering its decision the trial court read the following statement from a case referred to by the trial court as "*People v. James Thorns*, 83 Ill.App.3d 709, p. 713":

It is clear that once the *Miranda* warnings have been given and an individual indicates in any manner prior to or during questioning that he wishes to remain silent, that the interrogation must cease. Citing *Miranda vs. Arizona*, 16 Law. Ed. 694. However, here the

defendant did not indicate in any manner that he wished to remain silent, but merely refused to sign the form which set up the various waivers. He indicated that if he did give a statement he would do it with the rights that were explained to him in mind, and he thereafter willingly answered questions. The refusal to sign the waiver was insufficient by itself to establish the fact the [*sic*] defendant wished to stop interrogation. See *People vs. Dooley*, 42 Ill.2d 148. The totality of the circumstances surrounding the giving of the statement clearly shows that the narrative was given willingly. See *People vs. Williams*, 131 Ill.App.2d 149, 264 N.E.2d 901. *Klingler vs. United States*, 8th Circuit Court of Appeals, 409 Fed.2d 299."

The foregoing quotation accurately reflects the language embodied in *People v. Starnes*, 8 Ill.App.3d 709, 713, 289 N.E.2d 264. Significant is the fact that this quotation embraces the "totality of the circumstances" test and indicates that the court in *Starnes* found "that the narrative was given willingly." It would be highly improbable that after reading this quotation the trial court would impose upon the defendant the burden of proving the involuntariness of the statement in question. The probability of the trial court's imposition of an inverse burden of proof is rendered even more improbable by the trial court's closing statement:

"I feel that under the testimony that's been presented to the Court here today, and under the totality of the circumstances, I do not feel that the failure of the signature of a waiver of rights was sufficient to stop the interrogation. I feel that the testimony exhibited and presented in Court today is sufficient enough to satisfy this Court that this man was advised of his rights, and that the oral statement that allegedly was taken was done so with an understanding of his rights. Defendant's Motion to Suppress will be denied."

In view of these statements, we are compelled to conclude that the trial court's error in instructing the defendant to call the first witness did not result in the improper placement of the burden of proof or otherwise taint this proceeding.

■■ The defendant also contends that the trial court erred by failing to require the State to produce all material witnesses. As a general rule, when the voluntary nature of a confession is brought into question, the State must produce all material witnesses. (*People v. White*, 22 Ill.App.3d 180, 317 N.E.2d 323.) Defendant cannot, however, object on appeal that the State did not produce all material witnesses at a hearing on the motion to suppress an alleged confession as involuntary where he failed to object in the trial court. (Ill. Rev. Stat. 1971, ch. 38, par. 114—11(d);

*People v. White,* 22 Ill.App.3d 180, 317 N.E.2d 323.) Since the defendant in the instant case, who was advised by counsel, did not object to the State's failure to produce all material witnesses at the hearing on his motion to suppress, we will not entertain such objection for the first time on appeal.

■■ Next, the defendant contends that the State failed to prove by the preponderance of the evidence that the statement in question was made voluntarily. In response to the question: "Assuming you were read these rights, did you make any response to the policeman that read you these rights?" the defendant stated: "Yes, one statement, which was that I understood what it meant—that I didn't want to make no statement." Defendant later reiterated: "I recall that I told her [Officer Towse] that I did not want to make a statement." The defendant argues that the testimony of Officer Towse confirms his position that he exerted his right to remain silent. The basis for the defendant's argument is the following colloquy,

> "A. [Officer Towse] Yes. They asked who was with you, because we had information that someone had run from the building.
> Q. [Defendant] And what was said?
> A. Well, you said you didn't want to tell us that right then.
> Q. I wouldn't say anything?
> A. Right."

If these were the only responses given by Officer Towse relating to the alleged incident, we would be inclined to agree with the defendant that the State has failed to sustain its burden of proof. However, later Officer Towse responded in the following manner,

> "Q. [Defendant] When they arrested me and put me in the car— when they kept asking me to repeat—about whether I wanted to say anything—why did they keep on asking me after I said I did not want to make no statement? That I wasn't going to say nothing.
> A. [Officer Towse] I didn't testify to that.
> Q. You weren't in the car?
> A. Yes. I was in the car.
> Q. And you can't remember none of this?
> A. I don't—after they read you your rights, you didn't want to make a statement. Whenever they asked who was with you, you said you didn't want to tell them at that time."

The preceding colloquy raises doubt whether the defendant expressed a desire to remain silent or merely refused to identify an alleged accomplice. We believe this discrepancy was eliminated by Officer Towse's following statement, "I'd like to correct one thing. Never at any point did you say

you didn't want to say anything.  *  *  *." It was within the province of the trial court, which was sitting as the trier of fact, to determine whether Officer Towse's testimony was more credible than that of the defendant. Moreover, it is our opinion that when Officer Towse's testimony is combined with testimony of Officer Park, who testified, "He [defendant] told us he didn't want a lawyer and he would talk to us about it [the alleged robbery]," the trial court, as the trier of fact, was justified in finding that the State met its burden of proving by the preponderance of the evidence that defendant's statement was offered voluntarily. We will not disturb this finding unless it is contrary to the manifest weight of the evidence (*People v. White,* 22 Ill.App.3d 180, 317 N.E.2d 323); this has not been demonstrated.

Even if we were to decide that defendant did assert his right to remain silent immediately after arrest, we believe he later waived it at the police station. In the case of *People v. Burbank,* 53 Ill.2d 261, 291 N.E.2d 161, *cert. denied,* 412 U.S. 951, the defendant was first advised of his rights in the squad car after his arrest and told the officers that he had nothing to hide. He was again advised of his rights at the police station, at which time he told the officers of his involvement in the crime. The evidence was that the defendant understood his rights. Under these circumstances our supreme court upheld defendant's conviction for murder over his objection that his confession was not given with the intention to waive his constitutional right, declaring:

> "Once an accused has been advised of his rights and indicates that he understands them, his choosing to speak and not to request a lawyer is evidence that he knows his rights and chooses not to exercise them. [Citation Omitted.]" (53 Ill.2d 261, 266.)

The fact that defendant here refused to sign a form waiving his rights is insufficient by itself to establish that defendant wished to stop the interrogation. (*People v. Starnes,* 8 Ill.App.3d 709, 289 N.E.2d 264; see *People v. Williams,* 131 Ill.App.2d 149, 264 N.E.2d 901.) Before the interrogation, Detective Parker gave the defendant a thorough and comprehensive reading of his *Miranda* rights, including his right to remain silent, demand a lawyer and refuse to answer any questions. The defendant indicated that he understood his rights and was familiar with both booking procedures and rights forms. Detective Parker testified that defendant indicated he did not want a lawyer and would talk to the officers about the alleged armed robbery. Officer Towse stated that the defendant appeared to understand his rights and that he said he understood them. Although defendant contradicts much of the two officers' testimony, sufficient evidence exists in the record for the court below to find the officers' testimony more believable than the testimony of

defendant, and, consequently, a finding that defendant made the alleged oral statement with an understanding of his rights is justified.

Finally, the defendant contends that the minimum sentence imposed by the trial court, 6 years, must be reduced to 4 years. While it is true that this court has long recognized the pragmatic advantages of the one-to-three ratio in sentencing, as recommended by the American Bar Association, and made mandatory for Class 2 and Class 3 felonies (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(3), (4)), our legislature has seen fit to omit any requirement that a sentence imposed on a Class 1 felony be so restricted (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(2)). The defendant in the instant case was charged with, and convicted of, armed robbery, a Class 1 felony. The minimum sentence there is 4 years "*   *   *   unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term." Ill. Rev. Stat. 1973, ch. 38, 1005—8—1(c)(2).

■■ The record in the instant case reveals that the defendant had compiled an extensive juvenile arrest record, had previously been sentenced to serve a term for burglary, had violated his parole on the burglary charge, and had committed the instant offense just shortly after completing his sentence for burglary. The record also reveals that during the course of the commission of the instant offense one person was injured when he was struck on the head with what he thought was a gun. In view of these factors, which were brought to the attention of the trial court at the defendant's hearing in aggravation and mitigation, we cannot say that the trial court abused its discretion in imposing a sentence in excess of the 4-year minimum provided by statute. Consequently, we will not reduce the sentence of 6 to 12 years imposed upon the defendant for the offense of armed robbery.

The judgment of the circuit court of Madison County is, therefore, affirmed.

Judgment affirmed.

JONES, P. J., and CARTER, J., concur.