THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES STARNES, Defendant-Appellant.

(No. 71-122;

Second District—November 8, 1972.

Ralph Ruebner and Paul Bradley, both of Elgin, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford, for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant, James Starnes, was convicted of the murder of his wife after a jury trial. He was sentenced to 25 to 50 years. On appeal he contends (1) that the court erred in admitting two oral statements alleged to have been made by him; (2) that certain other evidence was improperly admitted; (3) that he was proved guilty only of voluntary manslaughter; and (4) that his sentence is excessive.

Ruth Wiley was shot and killed on June 9, 1970, in the living room of her Rockford home. Her nine-year-old daughter, Brenda Wiley, was permitted to testify over objection after an examination by the court directed to her competency and understanding. She said that she was in the room when "Big James", with whom the family had lived in Detroit, came in the front door and said to her mother, "I told you I was going to get you"; that her mother said, "Please don't shoot me, James"; and that defendant then shot her. The victim's fourteen year old daughter, Esther Wiley, testified that she was in the kitchen at the time, that she heard the door open, and heard the defendant say, "I told you I was going to get you"; that she heard her mother scream and say "Please, James, don't shoot me"; and that she then heard two shots and ran out of the house. She testified that she did not see the defendant but recognized his voice. Both children said no other man was in the house that night.

A witness who was married to the decedent's sister testified that Ruth Wiley had moved to Rockford shortly before Easter and that soon after that the defendant called and threatened to kill Ruth Wiley when she refused to speak to him.

F.B.I. agents and Winnebago County police officers testified to oral

statements made by the defendant to them on separate occasions. In substance, defendant stated that he had resided with his common-law wife, Ruth Wiley, in Nashville until 1965, and that they had one child. In 1965 they moved to Detroit, where he said they were happy until the early part of 1970 when his wife's sister tried to convince his wife to move to Rockford. He found his wife and children gone when he came home one day in March. He tried to communicate with her in Rockford but she refused to accept the calls. He sent $500 to his wife to buy his daughter some clothes and toys. He learned the child never received them. He drove to Rockford. After waiting in the car for several hours, he entered the house and found a man present whom he discovered had received the $500. He became angry. He intended to shoot this man, but the man ran out and defendant turned and shot his wife. He then fled, driving toward Tennessee, and during the trip he sold the gun at a gas station.

Defendant did not testify nor present any witnesses in his defense.

Defendant first argues that his June 12th statement to the F.B.I. agents should have been suppressed. He claims that pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, interrogation should have stopped when he refused to sign a waiver of rights form, as this evidenced his intention not to waive his right against self-incrimination and his right to counsel. He also contends that the State failed to satisfy its heavy burden of demonstrating that he knowingly and intelligently waived his rights. We do not agree.

As a result of a complaint and an arrest warrant having been issued for defendant in Winnebago County on June 10, 1970, the defendant was arrested in an F.B.I. stakeout near College Grove, Tennessee, in the early morning hours of June 12, 1970. The agents testified that they read an "advice of rights" form to defendant, discussed it with him, and gave it to him to read. Defendant read the form and stated that he understood his rights but that he preferred not to sign it. According to the agents, defendant said that if he answered any questions it would be with full knowledge of his rights and knowing that he did not have to answer any questions. Defendant was not interrogated immediately but was asked if he would consent to a search of his automobile. He did consent, signing a written waiver, although the search was unproductive. Defendant was then driven to his brother's house in the near vicinity to dispose of his car. After being allowed to speak with his brother, defendant and the two agents began their drive to Nashville some 40 miles away. Defendant was reminded of the provisions of the rights and waiver form, and specifically of his right to counsel, and was asked if he had any objection to telling what occurred in Rockford. He stated

that he had no objection, and immediately began a 30-45 minute narrative.

■■ It is clear that once the *Miranda* warnings have been given and an individual indicates in any manner prior to or during questioning that he wishes to remain silent that the interrogation must cease. (*Miranda v. Arizona*, 16 L.Ed.2d 694, *supra*, at page 723.) However, here, the defendant did not indicate in any manner that he wished to remain silent, but merely refused to sign the form which set up the various waivers. He indicated that if he did give a statement he would do it with the rights which were explained to him in mind, and he thereafter willingly answered questions. The refusal to sign the waiver was insufficient by itself to establish the fact that defendant wished to stop interrogation. (See *People v. Dewey* (1969), 42 Ill.2d 148.) The totality of the circumstances surrounding the giving of the statement clearly shows that the narrative was given willingly. See *People v. Williams* (1970), 131 Ill.App.2d 149, 264 N.E.2d 901; *Klingler v. United States* (8th C.C.A., 1969), 409 F.2d 299.

Defendant cites *United States v. Crisp* (7th Cir., 1970), 435 F.2d 354, and *United States v. Nielsen* (7th Cir., 1968), 392 F.2d 849. Neither case supports his position under the facts in this case, however. In *Crisp*, defendant explicitly stated that he was not willing to discuss any bank robbery, and it was held that this should have ended the questioning. In *Nielsen*, the defendant coupled his refusal to sign with a statement that he wanted to see his attorney, and the fact that defendant had previously retained counsel was known to the interrogating officers. Nielsen's then consenting to talk was a much greater change of position than in this case where Starnes merely refused to sign the waiver form.

The trial court's ruling in admitting the testimony of the oral statement was not against the manifest weight of the evidence. *People v. Carter* (1968), 39 Ill.2d 31, 38.

In this view, we necessarily reject the position of the defendant that the later oral statement made to the Winnebago County officers was inadmissible as the "fruit of a prior unlawful statement".

Defendant was again clearly warned of his rights and a totality of the circumstances shows no element of compulsion or involuntariness. Also, the second statement added almost nothing in the way of additional facts to the first statement.

■■ Defendant also contends that under *Massiah v. United States* (1964), 377 U.S. 201, 12 L.Ed.2d 246, 84 S.Ct. 1199, and subsequent cases, his second statement should have been suppressed even if the first was admissible because it was obtained subsequent to his extradition, at

a time when he was not represented by counsel and had not knowingly waived his right to counsel. This contention is also not persuasive. The right to counsel was stated to him and he said he understood his right. When asked if he wanted to talk, he then answered affirmatively. The facts clearly establish a knowing and intelligent waiver by the defendant. No express waiver of the particular right was required. *People v. Brooks* (1972), 51 Ill.2d 156, 164.

■■ Defendant next contends that trial testimony regarding his refusal to sign the waiver of rights form and his later refusal to give a written statement without counsel was neither material nor relevant and deprived him of a fair trial. It is true that if a defendant does not make a statement, evidence of his refusal to make the statement or to sign a waiver violates his constitutional right to remain silent and may not be admitted. (*People v. Lewerenz* (1962), 24 Ill.2d 295, 299.) However, where a statement has been made, the testimony relates to the issue of whether, under the total circumstances, the statement is voluntary. There is then no violation of defendant's right to remain silent, because the defendant has not, in fact, remained silent. Further, no objections were made when the evidence was introduced and the alleged error was not raised in defendant's post-trial motion.

■■ At trial, defendant's counsel objected to the competency to testify of nine-year-old Brenda Wiley, and again raises the issue here. It is well established that it is not age but the degree of intelligence of a child which determines the question of competency to testify. (*People v. Ballinger* (1967), 36 Ill.2d 620, 622.) The trial judge subjected the child to an examination to establish her competency. The fact that the child could not remember the name of her teacher when she lived in Detroit, nor how long she lived there did not make her incompetent. Neither did the fact that she sometimes told lies, and did not know the meaning of the word "oath" make her incompetent. The witness knew the name of her present school teacher; said she would not tell a lie in court; knew what it meant to swear to tell the truth; stated that if she was sworn to tell the truth she would always do so; and knew that she would be punished if she told a lie. We think the record adequately shows that the witness was sufficiently mature to receive correct impressions by her senses, to recollect and narrate intelligently, and to appreciate the moral duty to tell the truth. Reviewing the ruling of the trial court under these standards we find no abuse of discretion. See *People v. Ballinger, supra,* page 622; *People v. Davis* (1957), 10 Ill.2d 430, 436-437.

■■ Defendant also contends that the evidence shows that he acted under a sudden and intense passion at the time of the shooting

due to serious provocation by the deceased, and that he was therefore guilty of voluntary manslaughter rather than murder. He asks the court to exercise its statutory power to reduce the degree of the offense to voluntary manslaughter under Supreme Court Rule 615(b)(3). We find no basis for doing so. The argument must necessarily be based on defendant's statements to the officers that he came to take his daughter, became angry upon discovering that the money he had sent for her had been received by a man who was present in the house, and shot his wife when the man ran from the house. The jury, however, was justified in believing the testimony of the victim's daughters that no other man was present when defendant entered the house and that after a brief exchange with their mother defendant shot her. The further evidence for the State that defendant had previously threatened his wife, that he sat in the car in front of his wife's house for several hours, and that he entered the house with a loaded gun would also seem inconsistent with defendant's theory that his acts were the result of a sudden and intense passion. Defendant's discovery that the man had received money which he had sent for his child was insufficient legal provocation to justify a reduction of the offense to voluntary manslaughter. (See *People v. Crews* (1967), 38 Ill.2d 331, 335.) The defendant had the benefit of an instruction on both murder and voluntary manslaughter, and the jury was justified on the record in concluding that defendant was proved guilty of the offense of murder beyond a reasonable doubt.

■■ Defendant's final contention is that his 25 to 50 year sentence is excessive and should be reduced. He points to the fact that his prior record consists only of a conviction for larceny of an automobile in 1953, and a $50 fine for carrying a concealed weapon in 1968. Considering the nature of the crime and its circumstances it does not appear that the sentence constituted a great departure from the fundamental law and its spirit and purpose. We, therefore, do not exercise our authority under Ill. Rev. Stat. 1969, ch. 110A, sec. 615(b)(4).

The judgment below is affirmed.

Judgment affirmed.

T. MORAN and GUILD, JJ., concur.