THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANTHONY ROCK, Defendant-Appellant.

(No. 73-182;

Third District—January 23, 1976.

STOUDER, J., dissenting.

James Geis, of State Appellate Defender's Office, of Ottawa, for appellant.

Martin Rudman, State's Attorney, of Joliet (William McMenamin, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

Defendant, Anthony Rock, was indicted for burglary and theft. After a trial by jury, defendant was found not guilty of burglary and guilty of theft. This appeal is from the judgment of the Circuit Court of Will County finding defendant guilty of theft and sentencing him to not less than two nor more than four years in the Illinois State Penitentiary.

Two issues are raised on this appeal. Defendant contends it was reversible error to admit into evidence an unsigned waiver of constitutional rights form when the defendant merely gave an exculpatory statement to the police. He also contends that comments by the prosecutor in closing argument, to the effect that he intended to indict one of defendant's alibi witnesses, constituted reversible error.

At about 12:15 a.m. on May 18, 1971, Will County Deputy Sheriff Brown, while on duty, had occasion to follow a pickup truck carrying a garden tractor into a rural driveway. When the driver got out of the truck and walked toward the car Brown recognized him as the defendant, Anthony Rock. He had seen defendant in person thirteen times prior to that date. For about twenty to thirty seconds Brown conversed with the man inquiring as to who owned the pickup truck and who owned a garden tractor in the truck. Rock responded that the truck belonged to a person named Rich who was still seated inside the truck and that the tractor was being returned to the person that he, Rock, borrowed it from. The driver then walked toward the house near the driveway, knocked on

the door, disappeared behind the house and never did return to the truck.

The truck's other occupant, Richard Milavec, left the truck and came back to talk with Officer Brown. He informed Deputy Brown that he was returning the garden tractor to its owner who lived in the house. About this time, however, the owner of the house, Gilbert Mitchell, came out and stated he did not own the tractor. Milavec was arrested by Officer Brown. The true owner of the tractor later identified it. Rock was taken into custody at 1:25 a.m. and was brought from his home to the jail.

During the direct examination of Officer Brown for the State, he was asked whether he had a conversation with Rock at the jail. Defense counsel at this point objected to the line of questioning on the grounds that "every defendant is entitled to have his constitutional rights read to him," thereby raising the issue of the voluntariness of Rock's exculpatory statement. Officer Brown thereupon testified that he advised Rock of his constitutional rights prior to talking to him by reading to him from a standard rights form identified as People's Exhibit 30. Defense counsel, raising the issue of voluntariness, objected that his client's signature was not on the form. The court sustained the objection "unless it's shown that defendant waived his constitutional rights." "That's what we're trying to show your honor," said Mr. Polito, the assistant State's attorney, "that he did waive his constitutional rights and agreed to talk but refused to sign the form." The court then permitted the State to proceed. Officer Brown was interrogated as to how he used People's Exhibit 30 and without objection testified that he read each of the questions on the form to Rock, e.g., "You have a right to remain silent. Do you understand that." Brown testified that Rock answered "Yes," and that he (i.e., Brown) then wrote beside the question the defendant's response "yes." Continuing his testimony, Brown stated in respect to his use of the exhibit that he conversed with Rock as follows:

> " 'If you answer any questions, your answers can and will be used against you in court at some later time. Do you understand this?' Mr. Rock answered yes. I wrote the answer yes. 'You have the right to talk to a lawyer before answering questions. Do you understand this?' Mr. Rock answered yes and I wrote the answer yes. 'If you do not have money to hire a lawyer, a lawyer will be appointed by the court before any questioning to advise you and to be present in case you decide to answer any questions.' I asked him if he understood this and he said yes and I wrote the answer yes. 'If you decide to answer questions without a lawyer present

you have the right to stop answering at any time.' I asked him if he understood that and he said yes and I wrote the answer yes. 'Now, knowing these rights, are you willing to answer questions without first speaking to a lawyer?' "

The record continues:

"Q. [by Mr. Polito] What's his answer?

A. Yes.

Q. What did you do then?

A. I wrote the answer 'yes'.

Q. What happened then?

A. Prior to talking did anyone strike you or force you to answer questions?' His answer was 'no' and I wrote the answer 'no'. 'Prior to talking to me did anyone make any threats that anything would happen to you if you did not answer questions?' His answer was 'no' and I wrote the answer 'no'. 'Prior to talking to me did anyone promise you anything or offer you any rewards of any type for answering questions?' His answer was 'no' and I wrote the answer 'no'. The bottom part of the form is the waiver of rights and it reads 'I certify above warnings were read to him on May 18th, 1971 at 5:15 a.m. and that answers written above are given to me, to R. L. Brown at that time.'

Q. What happened then?

A. It contains a line for the person to sign it and the normal procedure is to ask them to read the form, read the answers and initial the answers.

Q. What happened?

A. Mr. Rock refused to sign the form.

Q. What did he say?

A. He said he'd talk without a lawyer present but he wouldn't sign the form.

Q. Then what did you do? Proceed with the conversation?

A. I had a conversation with Mr. Rock.

MR. POLITO: All right, your Honor, at this time I'd like to offer this in evidence, People's exhibit 30 for identification to show that his rights were given to him.

MR. LOUGHRAN: May I look at that again?

THE COURT: Give it to Mr. Loughran.

MR. LOUGHRAN: This was all in your handwriting?

WITNESS: All except the two witness signatures.

MR. LOUGHRAN: Yes.

MR. POLITO: I renew my offer, your Honor.

MR. LOUGHRAN: I object to it. It does not in any way—" The court interrupted saying it would reserve its ruling on the admissibility of People's Exhibit 30; subsequently it was admitted to evidence over defendant's objection. The exhibit has the notation "refused to sign" written over the space for defendant's signature. Officer Brown proceeded to relate the exculpatory statement made to him by Rock who said that the last time he saw Milavec was the previous afternoon of May 17 when they were together in Milavec's truck; that they had gone to Milavec's house between 4 and 6 p.m. that evening and that he left Milavec's house and went to his own house and stayed there until the time of his arrest at 1:25 a.m. on May 18.

From studying the record it appears that the State offered the unsigned waiver of constitutional rights form for two purposes. One was to show that the defendant was given and understood his constitutional rights pursuant to the holding of *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602 (1966). The second purpose was to establish foundation evidence to introduce the policeman's testimony regarding the defendant's exculpatory statement made during his custodial interrogation.

The defendant, in claiming error, relies on *People v. Jones,* 4 Ill.App.3d 907, 282 N.E.2d 248 (1972). That case involves an entirely different set of facts than the case at bar. The *Jones* case would clearly prevent admission of the unsigned *Miranda* rights form into evidence since the defendant did not make any statement to the police and chose to stand mute. In such a case admission of the unsigned waiver of constitutional rights form could have no purpose except to prejudice defendant in the eyes of the jury for his insistence upon his constitutional right to remain silent.

In the case at bar, Rock himself testified that his rights were read to him and that he answered the questions that the policeman read from the *Miranda* rights form and that he made the exculpatory statement denying being involved at all in the alleged crime, or being present at the scene at the time in question. Based on these facts the State relies on the holding in *People v. Starnes,* 8 Ill.App.3d 709, 289 N.E.2d 264 (2nd Dist. 1972), to sustain the admissibility of the exhibit. In that case the unsigned waiver form was held to be admissible as material and relevant to the issue of the voluntariness of the *incriminating* statements made by the defendant after he had refused to sign the form. As applied to the set of facts in that case, the defendant's refusal to sign was pro-

bative. of the issue of whether his statement was voluntary in view of the totality of the circumstances. Our present case is distinguishable from the *Starnes* case, since Rock made an exculpatory statement rather than a confession and because no objection was made at the trial in *Starnes* to the introduction of the unsigned waiver form.

■■ The case at bar falls into a third category different from either the *Jones* or the *Starnes* case. Here the prosecution used Rock's exculpatory statement to his detriment at the trial much the same as if it had been an inculpatory one. In such instance, *where the voluntariness of the statement was raised by defense counsel's objection*, proof that the *Miranda* warning safeguards were given was necessary to make the jury aware that the defendant knowingly and voluntarily answered the police interrogation. The interrogation of Officer Brown in respect to his giving the *Miranda* warnings was relevant and essential. The facts related to Officer Brown in defendant's exculpatory statement were relevant to show defendant's previous acquaintance with Milavec and that he was together with Milavec in the latter's truck sometime during the day the alleged crime was committed. The defendant did not object to the relevance of Brown's oral testimony as to the exculpatory statement at the trial court level, but objected only to the admission of the People's Exhibit 30 into evidence. The jury had already been informed through oral testimony and without objection, that defendant refused to sign; exhibit 30 was nothing but cumulative proof. Inasmuch as defense counsel raised the issue of the *voluntariness* of the statement but did not object to Brown's direct *oral testimony* that defendant agreed to talk *but refused to sign People's Exhibit 30 waiving his rights*, no prejudicial error could, under these circumstances, derive from the court's admitting the written exhibit into evidence.

In rebuttal of testimony given by witness Mrs. Greenburg, an assistant State's attorney took the stand and testified that this defense witness had contacted the prosecutor's office before trial to relate that defendant had threatened to expose embarrassing personal matters against her unless she would testify on his behalf to establish an alibi, and that the alibi she would relate would be false. Thereafter, in closing arguments, the assistant State's attorney argued that Mrs. Greenburg had perjured herself "and if I have anything to do with it * * * [she] * * * will be indicted for perjury, and that all the alibi witnesses stand and fall together." Defendant complains that these closing remarks constituted prejudicial error.

■■ The prosecutor's remarks were manifestly improper and would constitute reversible error were it not for the fact that the remarks were

plainly invited by the improper and unwarranted earlier argument of defense counsel which went entirely beyond the evidence, as follows:

"The State's attorney wants to see him [Rock] in prison. The assistant State's attorney wants to see him in prison. Mr. Polito wants to put him in prison * * * I'm going to ask you ladies and gentlemen, whose telling a lie or who told the lie? Mr. State's Attorney and his first assistant state's attorney that's running for state's attorney, wants to put Bindy Rock in prison to further their gain. The clang of the cell house door on Bindy Rock being put in jail will be like the grand opera to Rudman and Bertani [i.e., Assistant State's Attorney and State's Attorney]."

It is well settled that a defendant cannot provoke an irresponsible reply to his own outrageous argument and then claim error. (*People v. Hayes*, 23 Ill.2d 527, 179 N.E.2d 660 (1962); *People v. Reyes*, 131 Ill.App.2d 134, 266 N.E.2d 539 (1970); *People v. McMurray*, 6 Ill.App.3d 129, 285 N.E. 2d 242 (1972); *People v. Kelly*, 25 Ill.App.3d 753, 324 N.E.2d 82 (1975); *People v. Simmons*, 21 Ill.App.3d 310, 315 N.E.2d 226 (3rd Dist. 1974).) Moreover the court immediately instructed the jury to disregard the prosecutor's improper argument so that considering the totality of this vigorous trial, any prejudicial error was cured. *People v. Parks*, 133 Ill. App.2d 348, 273 N.E.2d 162 (1st Dist. 1971).

The judgment of the circuit court is affirmed.

STENGEL, J., concurs.

Mr. JUSTICE STOUDER, dissenting:

I disagree with the majority as to their holding it was not error to admit into evidence the unsigned waiver of constitutional rights form and I believe the case should be reversed and remanded for new trial.

The majority concedes *People v. Jones*, 4 Ill.App.3d 888, 282 N.E.2d 273, clearly prevents admission of the unsigned waiver of rights form where defendant chooses to stand mute. The basis for their belief is that the form could have no purpose except to prejudice defendant in the eyes of the jury for his insistence upon his constitutional rights. Since I believe the record in the instant case supports the conclusion that defendant did not raise the issue of voluntariness, I also believe the holding in *People v. Jones*, 4 Ill.App.3d 888, 282 N.E.2d 273, is applicable here wherein the only purpose to be served by admission of the unsigned waiver of constitutional rights form would be to cast suspicion upon defendant's refusal to sign the form.

The majority states that since defense counsel raised the issue of the

voluntariness of defendant's exculpatory statement but did not object to the deputy sheriff's direct oral testimony regarding defendant agreeing to talk but refusing to sign the waiver of constitutional rights form, it follows the admission of this form constituted nothing but cumulative proof and no prejudicial error arose from its admission into evidence. I do not find support in the record for the majority's conclusion that defense counsel raised the issue of voluntariness of defendant's statement. Defense counsel objected to the admission of the form into evidence but at no point did he raise the issue of voluntariness. In fact, as the majority states in their opinion, "The defendant did not object to the relevance of Brown's oral testimony as to the exculpatory statement at the trial court level, but objected only to the admission of the people's exhibit 30 (the unsigned waiver of constitutional rights form) into evidence." Furthermore, also as the majority states in their opinion, defendant himself testified his rights were read to him and the questions the policeman read from the *Miranda* rights form were answered by him. Apparently the real basis for admitting such a form into evidence in a case such as here is its general adverse effect on the defendant.

The majority argues defense counsel raised the issue of the voluntariness of defendant's exculpatory statement in two ways: (1) by objecting, on the grounds that every defendant is entitled to have his constitutional rights read to him, to the questioning of the deputy sheriff regarding whether he had a conversation with Rock at the jail; and, (2) by objecting, on the ground his client's signature was not on the form, to the deputy's testimony regarding the standard rights form. It cannot follow that because there is an objection on either of the above bases to the admission of either the unsigned waiver of constitutional rights form or oral testimony regarding statements made by defendant, that the issue of the voluntariness of any statement made is thus raised and the unsigned form becomes relevant to the issue of voluntariness. Such a holding effectively destroys the right of defendant not to sign the form in that it imposes such a heavy penalty upon him for asserting his rights that he in effect has no such right not to sign the form where he makes any statement, whether it be so deemed exculpatory or inculpatory. Furthermore, the unsigned waiver of constitutional rights form is in effect a self-serving document purporting to reiterate the police officer's oral testimony. As such, it is in the same category as a police officer's report which likewise being a self-serving document is inadmissible.

The trial court itself indicated its doubt as to the admissibility of the form by reserving its ruling. When the court did admit the unsigned waiver form it faced the possible choice of either admitting the form or declaring a mistrial if it found such admission improper.

For the foregoing reasons the judgment of the circuit court of Will County should be reversed and remanded for new trial.