THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROBERT CARPI, Defendant-Appellant.

Third District    No. 76-42

Opinion filed December 13, 1976.

Cirricione, Block & Krockey, P. C., of Joliet (V. James Cerri, of counsel), for appellant.

Edward Petka, State's Attorney, of Joliet (Ira Goldstein, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Defendant Robert Carpi appeals from a conviction of murder by the Circuit Court of Will County in a bench trial. Defendant was sentenced to a term of imprisonment of not less than 14 years nor more than 14 years and 1 day.

On appeal in this court, defendant alleges, in light of defendant's assertion that his actions were justified as self-defense, that the State failed

to prove defendant guilty beyond a reasonable doubt and, secondly, that the evidence is sufficient to justify a reduction of defendant's conviction of murder to voluntary manslaughter. Defendant also contends that the statutory scheme under which defendant was indicted and convicted, which charges felony murder based upon the forcible felony of aggravated battery, is unconstitutional under the equal protection and due process clauses of the Illinois Constitution.

It should be noted that the grand jury of Will County returned a three-count indictment against defendant. The first count of the indictment charged that defendant, on May 6, 1975, committed the offense of armed violence in that defendant, while armed with a handgun, committed the offense of aggravated battery, by intentionally and without legal justification causing bodily harm to Donald Wysocki, by striking Wysocki upon the head with the handgun. The second count of the indictment charged that defendant committed the offense of murder in that he committed the offense of aggravated battery on Donald Wysocki by striking Wysocki on the head with a handgun which caused a bullet to be discharged into the head and brain of Wysocki, and, as a result of the wounds, Wysocki died on May 19, 1975. The final count of the indictment charged that defendant committed the offense of murder in that he, knowing that his act created a strong probability of great bodily harm to Wysocki, struck Wysocki upon the head with a handgun, which caused the handgun to discharge a bullet into the head and brain of Wysocki and that as a result of the wounds caused by such bullet, Wysocki died.

As we have indicated, the trial of this case was conducted by the court without the intervention of a jury. The evidence by the State included testimony of several occurrence witnesses. The only defense witness presented, was the defendant himself. By reason of the nature of the offense and the factual issue as to the sufficiency of the evidence and, also, the contention made for reduction of the conviction from murder to voluntary manslaughter which is raised on appeal, it becomes essential that we set forth summaries of the testimony of the major witnesses at the trial.

Witness Steven Pozzi, who was called by the State, lived in the same apartment complex with the deceased Wysocki and the defendant. At approximately 5:30 p.m. on May 6, 1975, Pozzi was at his residence with his wife and 3-year-old daughter. At that time Wysocki and William Richards came to his apartment and invited Pozzi to play Frisbee with them in a grassy area within the apartment complex. This involved tossing a plate-shaped article so that it would sail through the air to be caught by the people playing. Pozzi told Wysocki and Richards that he would join them later, as soon as he finished eating his supper. While he was waiting for his wife to prepare the meal, Pozzi glanced out his apartment window

a few times and saw Wysocki standing in the grassy field of the apartment complex. The third time that Pozzi looked out, he observed Wysocki and the defendant standing near each other. Pozzi was approximately 150 to 200 feet from Wysocki and the defendant and had an unobstructed view of them from his second floor apartment window. Although he opened his window, Pozzi could not make out what Wysocki and defendant were saying. Wysocki and defendant were standing about two feet from each other, and it appeared to Pozzi that the pair were arguing. Wysocki's back was toward Pozzi and defendant was facing Pozzi. Wysocki and defendant were facing each other. Defendant was talking and gesturing with his hands toward the building in which defendant lived.

After a brief period, defendant turned around and started toward his building. Wysocki turned around and started walking in the opposite direction. Defendant then turned around and walked toward Wysocki at a fast pace. At this time, defendant unbuttoned his coat and Pozzi observed a gun sticking out of defendant's belt. Wysocki turned around and again defendant and Wysocki were facing each other. Defendant shouted at Wysocki, pulled out the gun and shook the gun at waist level in a back and forth motion to the side. After an interval of about 15 seconds, Wysocki turned and started walking away. After Wysocki took about three steps away, defendant leaned forward and struck Wysocki in the head with the gun and the gun discharged. Wysocki then fell to the ground. Wysocki's arms were at his side when he was hit. Pozzi did not see any physical contact between defendant and Wysocki before defendant struck Wysocki with the gun. Nor did he see the defendant pointing the gun at Wysocki prior to that time. Pozzi also testified that once in awhile he and others, including Wysocki and Richards, would throw firecrackers near the apartment complex.

Richards, who shared an apartment with Wysocki, testified that he had been playing Frisbee in the grassy area at the apartment complex with Wysocki for 5 to 7 minutes on the afternoon referred to, when he noticed defendant coming around the corner of the building. Wysocki then threw the Frisbee toward Richards. Richards walked over to retrieve the Frisbee and then turned around and walked toward Wysocki. Richards was then about 50 feet away from defendant and Wysocki. They were standing 2 or 3 feet from each other, engaged in conversation. Richards observed Wysocki move his hands in a gesture. Richards could hear portions of the conversation, including Wysocki stating that he and Richards did not have to stop playing Frisbee. The conversation ended, and Richards observed defendant turn and walk away. Wysocki turned around, facing Richards and facing away from the defendant. After defendant walked about 5 feet away, Richards saw defendant turn toward Wysocki, and raise his arm. At this time, Richards first noticed that

defendant had a gun in his hand. Richards then saw defendant strike Wysocki in the back of the head with a gun which was held in defendant's right hand. Richards heard a gun shot and Wysocki fell to the ground. Richards admitted that he had a conversation with Steven Pozzi in which Richards told Pozzi "if we are going to go to court, we are going to have to sit down and get our stories straight." Richards insisted, however, that his conversations with Pozzi were only for the purpose of refreshing Richard's recollection.

William Matchus, who testified for the State, said he was in the parking lot at the apartment complex driving his car at a speed of 2 to 3 miles per hour through the parking lot when he observed, at a distance of 35 to 40 feet, defendant and Wysocki standing on the front lawn, where the two appeared to be arguing. The witness observed defendant and Wysocki making motions with their hands but did not see any physical contact between the two. They had been standing face to face, the witness testified, when Wysocki turned around and started walking away. Defendant then reached inside his coat, raised his arm and brought his arm straight forward. The witness then heard a sound like a firecracker and after the witness got out of his automobile, he saw Wysocki lying on the ground, with defendant standing over Wysocki. The witness did not see an object in defendant's hand.

Gayla Harris testified that she was driving an automobile in the apartment complex and also observed Wysocki who had been facing defendant, turn away from defendant, when defendant reached inside his jacket. As defendant raised his arm, the witness said she could see that he had a small gun in his hand. She saw defendant lower his arm, striking Wysocki in the back of the head with the gun. At that time she heard a sound like a shot and saw smoke in the air as Wysocki collapsed to the ground. Although she testified at the trial that she saw no physical contact between defendant and Wysocki prior to the time when defendant struck Wysocki, she admitted to stating in a deposition that defendant and Wysocki had been pushing each other prior to the incident.

The State presented three more occurrence witnesses. One, a passenger in the Matchus automobile, and two who were passengers in the Harris automobile. Two of these witnesses testified in a substantially similar fashion to the prior State's witness. The third witness' testimony was generally consistent with that of the other State witnesses, but that witness testified only to seeing defendant and Wysocki arguing and losing sight of them as she entered an apartment building, where she thereafter saw Wysocki lying on the ground when she looked out of the window of her apartment.

A firearms expert employed by the Illinois Department of Law Enforcement testified that he had examined the weapon which was used

by the defendant. He identified it as a 32-caliber semiautomatic pistol. He testified that for the gun to operate, the weapon would be required to be cocked by withdrawing the slide backwards, both safeties on the gun would have to be set at the off position, and the trigger would be required to be pulled. This expert stated he had tested the weapon by striking the muzzle with a rubber hammer and by rapping the muzzle of the gun on a hard surface, but he had been unable to fire the weapon without actually pulling the trigger.

A doctor who testified for the State, stated that he had performed an autopsy upon Wysocki, and that a bullet had entered Wysocki's head, traveling from the rear of his head to the front, and that the cause of Wysocki's death was the gunshot wound to the head.

Defendant was the only defense witness at the trial. On May 6, 1975, he was a 71-year-old retiree, living on Social Security in the apartment complex. He lived in the apartment complex from November of 1974. Defendant stated he had, on numerous occasions, complained to the management about his windows being struck, firecrackers being exploded outside his windows, persons shouting into his windows, and other annoyances. He said the managers, security guards, and maintenance men to whom he complained told him that there was nothing they could do, because the persons responsible for the acts were karate students and they were "tough".

Before May 6, 1975, defendant stated he also had, on two occasions, confronted persons about this annoying conduct. The second confrontation involved decedent Wysocki. After the confrontation with Wysocki, defendant was informed that the persons involved were karate students and were "tough".

On May 6, 1975, at about 5:30 p.m., defendant stated he was in his apartment when he heard a "bang" against his window which he ignored. About two minutes later, defendant heard another "bang" against his window. He then looked out his window onto the grassy field and saw two men, one of whom was Wysocki, tossing a Frisbee back and forth. He stated that because he believed that Wysocki was a karate student, he pulled out his gun, which he had had for 35 years. He checked that the gun's safety was on and put the gun in his belt.

Defendant then testified that he walked onto the grassy field, up to Wysocki and politely asked Wysocki to stop throwing things at his windows. An argument ensued, and, according to defendant, Wysocki finally said to defendant, "Fuck you." Being disgusted and upset, defendant started walking away when Wysocki said something else. Defendant turned and walked back to find out what Wysocki had said, and Wysocki said, "Now what do you want?" Thinking that if he showed the gun, Wysocki would leave him alone, defendant opened his coat and

removed the gun from his belt. Defendant testified that he did not point the gun at Wysocki, but kept the gun at his side. Wysocki told defendant that he ought to shove the gun down his throat. Immediately thereafter, Wysocki made a quarter to half turn and his arms, according to defendant, came up to the level of his armpits. Defendant stated that he thought he was about to receive a blow from Wysocki and leaned forward and in an arching blow, struck Wysocki on the head. At that time there was a sound like a gunshot and Wysocki fell to the ground.

Defendant testified. that he had not intended to discharge the gun. Although defendant feared that Wysocki was a karate student, defendant testified that no one had particularly specified Wysocki to him as knowing karate. Defendant testified that prior to the time he pulled his gun out, Wysocki had not threatened him or shown a fist to him. On cross-examination, defendant admitted that on May 6, 1975, at about 2:30 or 3 p.m., he had been in the apartment complex office and had made a statement that at times he got so mad at the persons responsible for annoying him that he could take out a gun and shoot them. Defendant testified, however, that at the time he made the statement, he did not mean it seriously.

Following all the evidence, the trial court took the cause under advisement and finally entered a judgment finding defendant guilty of the offense of murder. The trial court made no finding with respect to the armed violence count of the indictment and did not specify under which murder count the defendant was found guilty of murder. As we have noted, following a sentencing hearing, defendant was sentenced to the term of imprisonment of not less than 14 years nor more than 14 years and 1 day.

■■ The first contention raised by defendant on this appeal is that, in light of defendant's asserted self-defense argument, the State failed to prove defendant guilty beyond a reasonable doubt. Defendant does not appear to contest the commission of the acts which caused the death of Wysocki, but seeks to justify those acts as self-defense. The trial judge in this case had the opportunity to view the witnesses and hear their testimony and, such determination would not be lightly set aside, but it is always the duty of this Court to examine the evidence in a criminal case, and if it is so unsatisfactory as to raise a serious doubt of defendant's guilt, the conviction will be reversed. (*People v. Griffin* (1st Dist. 1975), 29 Ill. App: 3d 581, 331 N.E.2d 121.) The trial court as the trier of fact determines the credibility of witnesses and the weight to be given to their testimony and a finding of guilty by the trial court will be disturbed only where the evidence is so unreasonable, improbable and unsatisfactory as to leave a reasonable doubt as to defendant's guilt. (*People v. Catlett* (1971), 48 Ill. 2d 56, 64, 268 N.E.2d 378.) Under section 7—1 of the

Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 7—1), it is provided that a person "is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." It is obvious that defendant's use of the loaded pistol to strike Wysocki on the head is the use of force likely to cause death or great bodily harm. It appears from the evidence that no serious physical contact was had between defendant and Wysocki prior to the time defendant struck Wysocki in the head. While there may have been some preliminary argument or even some pushing between defendant and Wysocki, the State presented substantial evidence to the effect that Wysocki, at the time defendant struck him in the head, was walking away from defendant. By defendant's own testimony it was shown that defendant had drawn the gun at a time when Wysocki was not threatening defendant and defendant was not justified in striking Wysocki with the gun, even if Wysocki, at the moment defendant struck, was about to turn and possibly cause some harm to defendant. On the basis of the evidence it is apparent that defendant had only a general suspicion, and no specific knowledge, that Wysocki was a karate student, so that defendant's belief, if any, that he was about to receive great bodily harm from a person trained in karate was not reasonable under the circumstances and facts in this case. We are, therefore, unable to say that the evidence of defendant's guilt was so unreasonable, improbable and unsatisfactory as to leave a reasonable doubt as to defendant's guilt.

■■ Defendant next argues that the evidence at the trial proved that defendant acted with an unreasonable belief that he was in danger of receiving great bodily harm, and that this court should therefore reduce the degree of defendant's offense to voluntary manslaughter. Under section 9—2(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 9—2(b)) it is provided:

> "A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable."

While Supreme Court Rule 615 gives this court the power, in the proper case, to reduce the degree of the offense of which a defendant was convicted, the Illinois Appellate Court has stated in *People v. Starnes* (2d Dist. 1972), 8 Ill. App. 3d 709, 715, 289 N.E.2d 264:

> "* * * [defendant] asks the court to exercise its statutory power to reduce the degree of the offense [from murder] to voluntary manslaughter under Supreme Court Rule 615(b)(3). We find no

basis for doing so. * * * The defendant had the benefit of an instruction on both murder and voluntary manslaughter, and the jury was justified on the record in concluding that defendant was proved guilty of the offense of murder beyond a reasonable doubt."

In the case at bar the trial court announced its findings as follows:

"I have had the matter under advisement since we concluded the trial * * * and have given very careful consideration to the evidence and the law given to me by counsel and I am prepared to enter my findings in accordance with the evidence and the law in the case.

The finding of the court is that the defendant Robert Carpi is guilty of the offense of murder, in manner and form as charged in the indictment and said finding of guilty is ordered entered of record."

The trial court's finding indicated that the court was informed of the law by counsel, and absent a showing to the contrary we must assume that the trial court was properly so informed. Defendant has not shown that the finding of guilty was entered by a trier of fact misinformed as to the applicable law. In absence of error upon which to predicate the exercise of Rule 615(b)(3) power, we should affirm if the trier of fact was "justified on the record in concluding that defendant was proved guilty of the offense of murder beyond a reasonable doubt." (*People v. Starnes* (2d Dist. 1972), 8 Ill. App. 3d 709, 715, 289 N.E.2d 264.) The evidence in this case is uncontradicted that the decedent was not armed, and was playing Frisbee when defendant began talking to him. There was substantial evidence that decedent was walking away from defendant when defendant struck him. There was much evidence, which could have been believed by the trial court, that defendant pulled his gun after the decedent had turned and started to walk away. By defendant's own testimony, he had no specific knowledge that the decedent was trained in karate.

We note the language of the Illinois Appellate Court in *People v. Wax* (1966), 75 Ill. App. 2d 163, 182, 220 N.E.2d 600, where the court stated:

"The evidence is clear that defendant was not acting in response to any physical injury and that decedent was, for practical purposes, shot in the back as he was walking away from the scene. As to the conversation upon the occasion, no matter how it may be interpreted, words do not constitute such provocation as would make the offense manslaughter."

On the record in the instant case, we do not believe we would be justified in reducing the degree of the offense to voluntary manslaughter.

■■ Defendant finally argues that the indictment, which charges

felony murder, based upon aggravated battery, is an unconstitutional denial of defendant's right to due process and equal protection as provided under article I, section 2 of the Illinois Constitution. We note preliminarily that the indictment, in addition to the felony murder count, charged that defendant committed murder, in that he struck Wysocki knowing that his act created a strong probability of great bodily harm to Wysocki, and in our view the evidence supports a finding of defendant's guilt under this murder count, independently of the felony murder count.

We should observe that the Illinois Supreme Court in *People v. McCabe* (1971), 49 Ill. 2d 338, 340-41, 275 N.E.2d 407, said, with reference to the equal protection clauses of the Federal and Illinois constitutions, that:

> "In determining whether a statutory classification violates the equal-protection clause, we must begin with the presumption that the classification is valid and must impose the burden of showing invalidity on the party challenging the classification. (*City of Rockford v. Grayned*, 46 Ill. 2d 492; *Thillens, Inc. v. Morey*, 11 Ill. 2d 579, 591; *People ex rel. Vermilion County Conservation District v. Lenover*, 43 Ill. 2d 209, 219.) The equal-protection clause does not deny the States the power to classify in the exercise of their police power and it recognizes the existence of a broad latitude and discretion in classifying. (*Begich v. Industrial Com.*, 42 Ill. 2d 32, 36.) If any state of facts may reasonably be conceived which would justify the classification, it must be upheld (see *Begich v. Industrial Com.*, 42 Ill. 2d 32)."

The Illinois felony murder doctrine is defined by statute (Ill. Rev. Stat. 1973, ch. 38, par. 9—1) as follows:

> "A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death: * * * (3) He is attempting or committing a forcible felony other than voluntary manslaughter."

When a defendant is charged with felony murder based on aggravated battery, he is not precluded from alleging that his actions are the result of self-defense, as defendant has done in the instant case. When defendant is charged with the offense of murder based on a forcible felony of aggravated battery, this does not preclude defendant from raising the issue, as defendant has done in the instant case, that the homicide be reduced to voluntary manslaughter because of serious provocation or unreasonable belief of self-defense.

It is apparent that if voluntary manslaughter were included in the section defining felony murder, the legislature would be completely destroying the offense of voluntary manslaughter, because any defendant who would commit a voluntary manslaughter would then be committing

the greater offense of murder. It is clear, therefore, from the cases, that there is a rational basis for the felony murder statute to include aggravated battery as a basis for felony murder and exclude the offense of voluntary manslaughter. *People v. McCabe* (1971), 49 Ill. 2d 338, 275 N.E.2d 407.

We find nothing to support the contention of defendant that the classification created by the legislative definition of the felony murder doctrine rendered the statute unconstitutional.

For the reasons stated, therefore, the judgment of the Circuit Court of Will County will be affirmed.

Affirmed.

STENGEL and SCOTT, JJ., concur.